### WALKER et ux. v. WILMINGTON STEAMBOAT CO.

(Circuit Court, E. D. Pennsylvania. August 22, 1902.)

#### No. 11.

1. INJURY TO PASSENGER—NEW TRIAL—VERDICT CONSISTENT WITH EVIDENCE.

In an action for an injury to a passenger on a steamboat, resulting
from its running into the dock through the refusal of the port reversing
engine to act, evidence examined, and *held* not to so far sustain the
burden cast on the carrier of explaining the accident and relieving itself
of the imputation of negligence as to require the setting aside of a
verdict for plaintiff and the granting of a new trial.

Rule for New Trial.

Action at law for damages brought by Andrew C. Walker and Martha, his
wife, against the Wilmington Steamboat Company for injuries received by
the wife while a passenger on board one of the boats of the said company.
The plaintiffs were returning from an excursion on board the City of Trenton,
a steamboat operated by the defendant company between Trenton and Phila-
delphia; and as the boat was about to make a landing at the dock in the
latter place, instead of stopping as it should, it ran into the bulkhead on
shore with such severity as to stave in the bow of the boat. Mrs. Walker
at the time was descending the main stairway from the upper deck, and
was thrown violently forward by the shock, causing, as it was claimed,
severe and more or less permanent bodily injuries. It was shown on behalf
of the defendant that the City of Trenton was a new boat, built and equipped
by builders of the best reputation, and fully provided with all the best-known
machinery and appliances, and that before being put in commission, but a
short time previous, it had been thoroughly inspected and tried. When the
accident occurred the boat was in charge of a skillful pilot, who gave the
proper directions and signals in order to make a safe landing. The engineer
testified that the boat did not stop because the port reversing engine refused
to act when he gave it steam. Anxious to know what was the difficulty, he
said that he examined the engine immediately afterwards, and upon taking

apart the choke or cushion valve, through which the steam from the cylinder exhausted, he found a small piece of soft-rubber packing clogging the valve and preventing the exhaust. To this he attributed the refusal of the engine to respond. Upon cross-examination he further testified, however, that he found one of the jam nuts on the piston rod slack; it was not enough to notice with the eye; he detected it with his fingers, and tightened it with a slight turn of the wrench. It was not sufficient, according to his statement, to have interfered with the working of the machine. It was further shown that the rod or link was lengthened or shortened by a sleeve nut which was held in place by a jam nut above and below; if, after the rod was properly adjusted, it was lengthened or shortened, the operation of the engine would be interfered with. But it was testified by other witnesses, who were expert engineers, that one jam nut was sufficient to hold the sleeve nut in place, the second nut being merely for additional security. The jury found a verdict in favor of the husband for $1,000, and $3,000 for the wife, and, in response to questions submitted by the court, made answer as follows: "Q. 1. What was the cause of the accident complained of in this case? A. Failure of the port reversing cylinder to reverse the port engine. Q. 2. Was the accident due to any want of care on the part of the defendant? A. Yes. Q. 3. If you answer 'Yes' to the last question, what want of care was there? A. As a skillful and competent engineer, lack of proper attention to careful examination of the engines, appliances, and operation of the same, under his charge. Q. 4. Was the accident caused by anything which could have been foreseen and prevented by the defendant by the exercise of due care? A. Yes." Defendant moved for a new trial on the ground that the verdict was not consistent with the evidence.

J. H. Backes and Alfred E. Peterson, for the rule.
Eugene Raymond, opposed.

ARCHBALD, District Judge (after stating the facts as above).[1] Although the defendant company was not an insurer of the safety of its passengers, the burden of explaining the accident and relieving itself from the imputation of negligence was necessarily upon it, and it was for the jury to say whether it had done so. According to the testimony of the engineer, the immediate cause of the accident was the refusal of the port reversing engine to act when he gave it steam in response to the signal from the pilot as the boat approached the dock. This, as he claimed, was due to a small piece of soft-rubber packing, which, upon examination immediately afterwards, he found lodged in the choke or cushion valve, choking the exhaust. He admitted, however, that in the course of the same examination he discovered a jam nut slack, which he said he tightened with a slight turn. The purpose of these jam nuts is to prevent the loosening of the sleeve nut which regulates the length of the links or rods. If the links are too long or too short, the engine will not work; and it was the theory of the plaintiffs' counsel that that was the cause of the accident, and not what the engineer attributed it to. It was testified by the engineer that jam nuts may be loosened from vibration, and have to be examined from time to time. But there are two of them,—one above and one below the sleeve nut; and it was contended on the part of the defendant that, as testified by some of the witnesses, the loosening of a single one would have no possible effect. On the other hand, if I understood it aright, there was a physical demonstration to the contrary in the presence of the jury, with a link or rod produced from a similar en-

[1] Specially assigned.
117 F.—50

gine. The jury, in answer to a special question put them by the court as to what want of care there was, if there was any, substantially found that there was a lack of proper attention on the part of the engineer to carefully examine the appliances and operation of the engines under his charge. This necessarily negated the theory that a piece of packing got caught in the choke valve, because admittedly that was not a matter that could have been discovered by any outward inspection, however complete. The jury plainly did not believe the testimony of the engineer to that effect, and it must be confessed that there was considerable to discredit it. The only question, then, is whether the cause of the accident as given by the jury was consistent with the evidence, and warrants the verdict which they have rendered. It is said that there were several practical engineers in that body, and one member who was in the rubber-packing business, and that they were therefore peculiarly fitted to dispose of the case. But be that as it may, I am not prepared to disturb the result. It was not for the plaintiffs to furnish a theory that would account for the accident, but for the defendant to show that it came from something which could not reasonably have been prevented. Even if there was nothing to contradict the evidence produced by the company to show that it had performed its duty, it would still have been for the jury to say whether they were satisfied with it; and there can be no just cause for complaint if they have rejected some of the facts testified to, and given a significance to others which fails to exonerate the company, provided only that it is consistent and warranted. While it is true that the engineer said the jam nut was not loose, but only slack, and was tightened with a slight turn, it may be fairly questioned whether, in the effort to clear himself from blame, he did not very much minimize the matter. These nuts, as he said, needed to be examined once or twice a day; and, if so, there would also seem to be a much greater importance in keeping them tight than the defendant's witnesses are inclined to concede. And if to this we add the demonstration in the presence of the jury, to which I have referred,—that a single jam nut will not keep the sleeve nut in place,—and the undoubted effect on the working of the engine from the lengthening or shortening of a link, we have not a little to sustain the conclusion reached by the jury that the loose jam nut was the source of the accident, and not a piece of loose packing in the choke valve, in which they did not believe.

The rule for a new trial is discharged.