## CHAPMAN *v.* BREWER, Assignee.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

Submitted March 19, 1885.—Decided March 30. 1885.

Where, under the Bankruptcy Act of March 2, 1867, a proceeding in involuntary bankruptcy was commenced in the District Court of the United States for the Western District of Michigan, before an attachment on land of the debtor, issued by a State Court of Michigan, was levied on the land, the assignment in bankruptcy, though made after the attachment, related back and vested title to the land in the assignee as of the commencement of the proceeding; and, where the attachment was levied within four months before the commencement of the proceeding, it was dissolved by the making of the assignment.

The proceeding in this case was held to have been commenced before the attachment was levied.

Statement of Facts.

The District Court which made the adjudication having had jurisdiction of the subject matter, and the bankrupt having voluntarily appeared, and the adjudication having been correct in form, it is conclusive of the fact decreed, and cannot be attacked collaterally in a suit brought by the assignee against a person claiming an adverse interest in property of the bankrupt.

The assignment in bankruptcy was made after a levy on the land under an execution on a judgment obtained in a suit in a State Court of Michigan, brought after the proceeding in bankruptcy was commenced: *Held*, that the assignee, being in possession of the land, could maintain a suit in equity, in the Circuit Court of the United States for the Western District of Michigan, to remove the cloud on his title, and that that court could, under the exception in Rev. Stat. § 720, restrain by injunction a sale under the levy and a further levy.

On the 10th of October, 1873, John Whittlesey, a creditor of Benjamin C. Hoyt and Enoch C. Hoyt, copartners under the name of B. C. Hoyt & Son, filed a petition in bankruptcy, in the District Court of the United States for the Western District of Michigan, praying that the said two persons, "partners as aforesaid," might be declared bankrupts. The petition contained the prescribed allegations, and set forth, as the demand of the petitioner, a promissory note made by the partnership, in its firm name, to his order. It alleged as one act of bankruptcy, that the firm had "fraudulently stopped payment" of its commercial paper "within a period of fourteen days," omitting to add, "and not resumed payment within said period." It alleged, as a second act of bankruptcy, that the firm had "suspended and not resumed payment" of its commercial paper "within a period of fourteen days."

Before anything was done on this petition except to file it, and on the 12th of January, 1874, Daniel Chapman procured to be issued by the Circuit Court of the County of Berrien, in the State of Michigan, an attachment against the lands and personal property of the said persons, as such copartners, for the sum of $4,895.44, in a suit brought by him, in that court, against them, to recover a money demand, which attachment the sheriff, on that day, levied on certain real estate in that county. Enoch C. Hoyt died on the 25th of February, 1874.

On the 5th of March, 1874, a petition, indorsed "Amended petition," was filed by Whittlesey, in the bankruptcy court, containing the same averments as the first petition, with the addi-

tion of the words so omitted in the first petition. In the body of the petition there was no mention of its being an amended petition, nor did it allude to the first petition, or to the death of Enoch C. Hoyt, and its prayer was the same as that of the first petition. It was verified March 3, 1874.

On the 14th of April, 1874, an order was made in the suit in the State court, entering the default of Benjamin C. Hoyt, for want of an appearance, on proof of personal service on him of the attachment and of the filing of the declaration; and, on the 16th of April, 1874, an order was made, on affidavit, suggesting the death of Enoch C. Hoyt, since the issuing of the attachment, and ordering that the action proceed against the surviving defendant, Benjamin C. Hoyt.

On the 2d of May, 1874, an order was made by the bankruptcy court, stated in it to be made on the appearance and consent of "solicitors for the alleged bankrupts," reciting that it had been shown that Enoch C. Hoyt had "departed this life since the commencement of the proceeding in said matter," and ordering that all proceedings should stand against Benjamin C. Hoyt, survivor of himself and Enoch C. Hoyt, and that they might be prosecuted against him, with like effect as if Enoch C. Hoyt had not died, and that the individual property of Enoch C. Hoyt be surrendered by the marshal to his proper representatives. On the same day, Benjamin C. Hoyt filed a denial of bankruptcy, signed by his attorneys, as follows: "And now the said Benjamin C. Hoyt appears and denies that he has committed the act of bankruptcy set forth in said petition, and avers that he should not be declared bankrupt for any cause in said petition alleged, and he demands that the same be inquired of by a jury."

On the 8th of May, 1874, in the suit in the State court, a judgment was rendered in favor of the plaintiff, against Benjamin C. Hoyt, for $4,930.15, and costs; and, on the same day, an execution was issued thereon, under which, on that day, the sheriff levied on the same real estate which he had levied on under the attachment.

On the 1st of June, 1874, an adjudication was made by the bankruptcy court, in these words:

"*Adjudication of Bankruptcy on Creditor's Petition.*

Western District of Michigan, *ss :*

In the District Court of the United States for the Western District of Michigan. In Bankruptcy.

In the matter of Benjamin C. Hoyt, against whom a petition in bankruptcy was filed on the 19th day of October, A.D. 1873. At Grand Rapids, in said district, on the first day of June, A.D. 1874. Before Hon. Solomon L. Withey, District Judge.

This matter came on to be heard at Grand Rapids, in said court, and the respondent having withdrawn his denial and demand for a jury, and having, by his attorneys, Hughes, O'Brien & Smiley, consented thereto.

And thereupon, and upon consideration of the proofs in said matter, it was found that the facts set forth in said petition were true, and it is therefore adjudged, that Benjamin C. Hoyt became bankrupt, within the true intent and meaning of the act entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved March 2, 1867, before the filing of the said petition, and he is therefore declared and adjudged a bankrupt accordingly. And it is further ordered that the said bankrupt shall, within five days after this order, make and deliver, or transmit, by mail, postpaid, to the marshal, as messenger, a schedule of his creditors, and inventory of his estate, in the form and verified in the manner required of the petitioning debtor by the said act.

Witness the honorable Solomon L. Withey, judge of the said District Court, and the seal thereof, at Grand Rapids, in said district, on the 1st day of June, A.D. 1874.

[SEAL.] ISAAC H. PARRISH,
*Clerk of District Court for said District.*"

In the certificate made by the clerk of the District Court of the United States for the Western District of Michigan, certifying the copies of the bankruptcy papers, he certifies, " that the foregoing is a true copy of the petition for adjudica-

tion filed October 10, 1873, copy of amended petition, order continuing proceedings, denial of bankruptcy by B. C. Hoyt, and adjudication of bankruptcy, on file in the proceedings of said court in said entitled matter." This is mentioned because, in the adjudication, the petition is referred to as filed October 19, 1873.

On the 16th of December, 1873, an alias execution was issued in the suit in the State court, which the sheriff, on that day, levied on real estate in Berrien County other than that before levied on by him.

On the 1st of October, 1874, the register in bankruptcy executed to Joseph W. Brewer an assignment in these words:

"In the District Court of the United States for the Western District of Michigan. In Bankruptcy.

In the matter of Benjamin C. Hoyt, Bankrupt.

Western District of Michigan, *ss :*

Know all men by these presents, that Joseph W. Brewer, of the village of St. Joseph, in the county of Berrien, and State of Michigan, in said district, has been duly appointed assignee in said matter: Now, therefore, I, J. Davidson Burns, register in bankruptcy in said district, by virtue of the authority vested in me by the 14th section of an act of Congress, entitled 'An Act to establish a uniform system of bankruptcy throughout the United States,' approved March 2, A.D. 1867, do hereby convey and assign to the said Joseph W. Brewer, assignee as aforesaid, all the estate, real and personal, of the said Benjamin C. Hoyt, bankrupt aforesaid, including all the property of whatever kind, of which he was possessed, or in which he was interested or entitled to have, on the tenth day of October, A.D. 1873, with all his deeds, books, and papers relating thereto, excepting such property as is exempted from the operation of this assignment by the provisions of said fourteenth section of said act; to have and to hold all the foregoing premises to the said Joseph W. Brewer, and his heirs, forever, in trust, nevertheless, for the use and purposes, with the powers, and subject to the conditions and limitations, set forth in said act.

In witness whereof, I, the said register, have hereunto set my hand and caused the seal of said court to be affixed, this first day of October, A.D. 1874.

[SEAL.]  J. DAVIDSON BURNS, *Register in Bankruptcy."*

On the 27th of January, 1876, Brewer filed a bill in equity, in the Circuit Court of the United States for the Western District of Michigan, against Chapman (the judgment creditor), and the sheriff who had levied under the first execution, and the deputy sheriff who had levied under the second execution, setting forth the filing of the first petition in bankruptcy, and its contents; averring "that the usual order to show cause was thereupon made by said District Court, and a certified copy thereof duly served on said Benjamin C. and Enoch C. Hoyt, who subsequently, and in due time, appeared in said bankruptcy matter;" and alleging the death of Enoch C. Hoyt, the making of the order of March 2, 1874, the adjudication of bankruptcy, the appointment of, and assignment to, the assignee, the facts in regard to Chapman's judgment, executions and levies, and threats by the officers to sell the real estate levied on. The bill made no mention of the amended petition in bankruptcy or of the attachment. It stated that the executions were outstanding; that the real estate so levied on was the separate property of Benjamin C. Hoyt at the date of filing the petition; that the plaintiff, as assignee, was the owner, and in possession, of all of it, except certain specified lots; and that said levies constituted a cloud on his title, and embarrassed and hindered him in disposing of the property, and that notices of the levies had been recorded in the office of the register of deeds of the county. The prayer of the bill was, that the levies be decreed void as against the plaintiff, as assignee, and the defendants be decreed to release to the plaintiff, as assignee, all their right and title and interest, acquired under the levies, in and to the real estate he was so in possession of, and, on their failure to do so, the decree be ordered to have the effect of said release, and he have leave to record the same in the office of said register of deeds, and the defendants be enjoined from selling or interfer-

ing with the real estate the plaintiff was so in possession of. The bill also prayed for such other and further relief as should be equitable and just.

The answer denied the validity of the petition set forth in the bill, and denied that Benjamin C. Hoyt was adjudicated a bankrupt on the footing of that petition, or on any petition of which he had notice, and denied the validity of the adjudication. It set up the attachment levy, and admitted the existence of most of the material facts alleged in the bill, and that the property was the separate property of Benjamin C. Hoyt, but denied that the plaintiff was entitled to any equitable relief. A replication was filed and proofs were taken, establishing the facts above set forth, and that Brewer had acted as assignee since October 3, 1874, and had had the management and custody and possession of the property; and paid taxes on it, since October 10th, 1874, and that it was worth about $10,000.

The Circuit Court made a decree, on April 15, 1880, adjudging, that Benjamin C. Hoyt, "at the date of the filing of the petition in bankruptcy against him, namely, on the 10th day of October, 1873, was the owner in fee of the" lands described in the bill as those of which the plaintiff was in possession; that the plaintiff succeeded to the interest which said Hoyt had in those lands on the 10th of October, 1873, and was and is the owner in fee, and in the actual possession, of them; that each of said execution levies was and is a cloud on the title of the plaintiff, as assignee, to said lands, and was and is void as against him; that the defendants execute to the plaintiff a release of their interest in said lands under said levies, and, on their failure to do so, the decree should have all the force and effect of such release, and might be recorded in the office of the register of deeds of said county; and that an injunction issue restraining the defendants from selling, disposing of, or interfering with, said lands, under said levies and from making any new or further levies on any of said lands, under said judgment. An injunction to that effect was issued and served January 3, 1881. Chapman appealed to this court.

*Mr. H. F. Severens* for appellant.—I. The allegations of the

bill do not show very distinctly whether the complainant claims anything upon the supposed ground of invalidity of the proceedings in the State court. Some parts of its frame would indicate that he did. In any event, it is well settled that an action to remove a cloud cannot be sustained when it is apparent that the facts set up in the pleading, if true, would not legally affect the title of the complainant. Nor will a bill be sustained when the matters relied upon as the basis for removing the cloud are of record and not *in pais*. *Farnham* v. *Campbell*, 34 N. Y. 480; *Marsh* v. *City of Brooklyn*, 59 N. Y. 280; *Ward* v. *Dewey*, 16 N. Y. 519, per Selden J.—II. Touching the question whether the United States Circuit Court had rightful authority to interfere with the proceedings of the State court, we submit that the general doctrine is well settled that the Federal courts have no authority, in cases not within their appellate jurisdiction, to issue injunctions to judgments in State courts, or in any manner to interfere with their jurisdiction or proceedings. Story, Constitution, §§ 375, 376. This doctrine has been steadily maintained. See *Diggs* v. *Wolcott*, 4 Cranch. 179; *Hagan* v. *Lucas*, 10 Pet. 400; *Peck* v. *Jenness*, 7 How. 612; *Williams* v. *Benedict*, 8 How. 107; *Peale* v. *Phipps*, 14 How. 368; *Pulliam* v. *Osborne*, 17 How. 471; *Taylor* v. *Caryll*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334. There is nothing in the bankruptcy laws which changes this general doctrine, and confers upon Federal courts power to arrest the proceedings of State courts. The Circuit Court erred in enjoining the sheriff from enforcing the execution issued by the State court. *Peck* v. *Jenness*, 7 How. 612; *Marshall* v. *Knox*, 16 Wall. 551; *Doe* v. *Childress*, 21 Wall. 642; *Eyster* v. *Gaff*, 91 U. S. 521; *Burbank* v. *Bigelow*, 92 U. S. 179; *Norton* v. *Switzer*, 93 U. S. 355; *Jerome* v. *McCarter*, 94 U. S. 734; *Davis* v. *Friedlander*, 104 U. S. 570; *Thatcher* v. *Rockwell*, 105 U. S. 467.—III. If the assignee desired to contest these matters he should have made himself a party to the proceedings in the State court. The provision of the statute authorizing him to prosecute and defend all suits pending at the time of the adjudication of bankruptcy seems to be decisive on this point. See also *Peck* v. *Jenness*, *Doe* v. *Chil-*

*dress* and *Eyster* v. *Gaff* already cited above, and *Hill* v. *Harding*, 107 U. S. 631.—IV. The bill is not framed to present or contest the substantial question as to the defendant's lien. It ignores altogether the attachment, and is not therefore adapted to make a contest on its validity under the bankrupt law. The allegations and the proof are not harmonious. It is also submitted that in substance and legal effect the adjudication in bankruptcy must be construed to have reference to the last petition and not to the former, under which nothing was done. The caption of the order was no part of it. *Jackson* v. *Ashton*, 8 Pet. 148. This would make a variance from the bill and would make the initiation of the bankruptcy proceedings subsequent to the attachment of the plaintiff, and present a question not competent to be litigated, on such pleading as the complainant's bill. *Moran* v. *Palmer*, 13 Mich. 367; *Piatt* v. *Vattier*, 9 Pet. 405; *Boone* v. *Chiles*, 10 Pet. 177; Story, Equity Pl., § 23. Counsel for appellee relies upon *Krippendorf* v. *Hyde*, 110 U. S. 276, and *Covell* v. *Heyman*, 111 U. S. 176. It is submitted that *Covell* v. *Heyman* strongly supports our second position. It affirms that property levied on by attachment or taken in execution is brought within the scope of the jurisdiction of the court whose process it is. The State court having lawful custody of the property was the proper forum for determining adverse claims to it. *Krippendorf* v. *Hyde* confirms our third position, and supplements the doctrine of *Covell* v. *Heyman*, by designating the appropriate line of procedure for one asserting rights, claimed to be paramount to those of the court having custody of the property.

*Mr. John W. Stone* for appellee.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court. After stating the facts in the foregoing language, he continued:

The principal question considered by the Circuit Court, as appears from its opinion, accompanying the record, was, whether, the judgment and levies in the suit in the State court being prior to the appointment of the assignee in bankruptcy, although that suit was not begun till after the first petition in

bankruptcy was filed, the Circuit Court had authority to enjoin a sale of the lands on the executions.

The appellant takes the points, that nothing appears to have been done under the first petition in bankruptcy ; that no order appears to have been made, or notice given, thereon; that the second petition was a new petition, and does not profess to be, and was not, an amended petition, and was not filed under any order authorizing it as an amendment ; and that the adjudication recites the date of filing of the petition as October 19th, instead of October 10th. The questions presented here by the appellant are, (1) Whether the alleged cloud on the plaintiff's title was a proper ground for equitable jurisdiction; (2) Whether the Circuit Court had authority to interfere with the proceedings of the State court ; (3) Whether the assignee should not have made himself a party to the proceedings in the State court, or have intervened therein ; (4) Whether the bill and the proof correspond, and whether the bill is adapted to contest the validity of such lien as arose by virtue of the attachment.

All the bankruptcy proceedings, except the appointment of the assignee, and the assignment to him, and all the proceedings in the suit in the State court, except the issuing and levy of the second execution, took place before the enactment of the Revised Statutes, on the 22d of June, 1874. The Revised Statutes purport to re-enact the statutes in force on December 1, 1873. At the latter date none of the proceedings in bankruptcy had taken place save the filing of the first petition, and the State court proceedings had not been begun.

The bankruptcy act in force on December 1, 1873, was the act of March 2, 1867, ch. 176, 14 Stat. 517, the 14th section of which provided that the assignment to an assignee in bankruptcy "shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings." The provision of Rev. Stat. § 5044 is, that the assignment "shall relate back

to the commencement of the proceedings in bankruptcy, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings." Under these provisions, if the bankruptcy proceedings were commenced October 10, 1873, they were begun before the State court attachment was made, and the assignment, when made, related back to October 10, 1873, and vested title in the assignee as of that date, and overreached and defeated all claim under the attachment. *Bank* v. *Sherman*, 101 U. S. 403 ; *Conner* v. *Long*, 104 U. S. 228. If the bankruptcy proceedings were not begun till March 5, 1874, the attachment, having been made within four months next preceding that date, was dissolved by the making of the assignment, and the title of the assignee vested as of March 5, 1874, which was before any execution levy. In this view it would not be necessary to notice any of the objections made as to the first petition, or as to the second petition regarded as an amended petition, were it not that the bill is founded on the first petition.

The date of October 19th in the adjudication must be regarded as a clerical or typographical error. The proper date is stated in the bill and admitted in the answer, and is stated in the clerk's certificate and in the bankruptcy assignment, and in a stipulation signed by the solicitors. Enoch C. Hoyt died February 25, 1874, before the second petition was filed, and the order made by the bankruptcy court, May 2, 1874, states that he had died " since the commencement of the proceeding in said matter ; " and it was that fact, in connection, probably, with the fact that no order to show cause had been served on Enoch C. Hoyt, which made it necessary for that order to direct the marshal to surrender to the representatives of Enoch C. Hoyt all his individual property.

It is also objected by the defendant, that the petition was filed against the firm, and that the record does not show that the petitioner filed any proof of his claim, or any proof of bankruptcy.

By § 36 of the act of 1867, Rev. Stat. § 5121, where two persons, partners in trade, should be adjudged bankrupt, not only was the property of the firm to be taken and administered, but also the separate estate of each partner. When Enoch C. Hoyt died, the partnership estate vested in the survivor, and the proceedings were, by consent of attorneys then appearing for the survivor, ordered to stand against him as survivor and to proceed against him as survivor. He appeared by attorney and consented to an adjudication. By § 41 of the act of 1867, Rev. Stat. § 5026, the appearance and consent of the debtor were made a waiver of other notice. The adjudication states that, on consideration of the proofs, it was found that the facts set forth in the petition were true. It was not necessary to show in this case what the proofs were. If the District Court had jurisdiction of the subject matter, and the bankrupt voluntarily appeared, and the adjudication was correct in form, it is conclusive of the fact decreed, and can be impeached only by a direct proceeding in a competent court, and can no more be attacked collaterally in a suit like the present than any other judgment. *Michaels* v. *Post*, 21 Wall. 398.

The adjudication and the assignment embraced the individual property of Benjamin C. Hoyt; and it is alleged in the bill, and admitted in the answer, that the property levied on by the defendants was his individual property.

These views cover all the objections made to the bankruptcy proceedings, and it must be held that the adjudication was regular and valid, and refers to, and was made on, the first petition, as amended by the second, and on a proceeding commenced when the first petition was filed.

It is objected that the bill makes no mention of the attachment. But the answer sets up the attachment and the levy thereunder. The question as to whether a priority of right was acquired thereby was raised by the pleadings, and the decree makes no reference to the attachment, but annuls the execution levies.

By § 2 of the act of 1867, the Circuit Court of the district has jurisdiction of all suits in equity brought by an assignee in bankruptcy against any person claiming an adverse interest

touching any property of the bankrupt transferable to or vested in the assignee. This provision is re-enacted in Rev. Stat. § 4979. By Rev. Stat. § 720 it is provided, that "the writ of injunction shall not be granted by any court of the United States, to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." It is contended for the appellant (1) that a suit in equity will not lie for the relief granted; (2) that, at all events, there was no power to award the injunction.

That the defendant claimed an adverse interest touching the property is clear. The question is, whether the plaintiff can have relief in equity. He was in possession of the land, and, as he says, of the only building there was on it. By statutory provisions in Michigan, commencing with § 29 of the act of April 23, 1833 (Code of 1833, p. 358,) followed by § 1 of the act of March 28, 1840, (No. 76, p. 127,) and the Revised Statutes of 1846, (title 21, chap. 90, sec. 36, p. 360,) and now in force as § 6626 of Howell's Statutes, "any person having the actual possession, and legal or equitable title to, lands, may institute a suit in chancery against any other person setting up a claim thereto in opposition to the title claimed by the complainant, and, if the complainant shall establish his title to such lands, the defendant shall be decreed to release to the complainant all claim thereto." If there should be a sale on the executions, there would be a sheriff's deed; and, by another statute of the State such deed is made *prima facie* evidence of the regularity of the sale. Act of February 19, 1867, No. 20, § 2, now in force as § 5678 of Howell's Statutes. It is held by the Supreme Court of Michigan, that the statute first cited covers a claim to a lien on land, and that a lien which may result in a sale and a deed constitutes such a cloud that equity will afford relief. *Scofield* v. *City of Lansing*, 17 Mich. 437, 447, 448. Especially will this be done, if the lien is not void on its face, as the lien here is not, but is a cloud on the plaintiff's title. Therefore, the plaintiff could obtain, under the Michigan statute, and in a court of Michigan, the relief he has had. In such a case a Circuit Court of the United States, hav-

ing otherwise jurisdiction in the case, will, as a general rule, administer the same relief in equity which the State courts can grant. *Clark* v. *Smith*, 13 Pet. 195, 203; *Broderick's Will*, 21 Wall. 503, 519, 520; *Van Norden* v. *Morton*, 99 U. S. 378, 380; *Cummings* v. *National Bank*, 101 U. S. 153, 157; *Holland* v. *Challen*, 110 U. S. 15; *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405. It has general power given to it, irrespective of citizenship, to grant equitable relief, in a suit in equity by an assignee in bankruptcy against any person who claims an adverse interest touching the assigned property.

We are not disposed, however, to rest the case upon jurisdiction arising from the Michigan statute. We hold that, under the equity jurisdiction conferred by the bankruptcy act, the Circuit Court had authority to remove this cloud on the plaintiff's title. It was the duty of the assignee to remove it, and to obtain a title which would enable him to sell the land for the benefit of the estate. The claim of the defendants, under the levies, is one which ought not to be enforced. It has no validity as against the rights of the plaintiff; it throws a cloud on his title; he is in possession, and cannot sue at law; and the papers supporting the defendant's claim are not void on their face. Story Eq. Jur. §§ 700, 705; 3 Pomeroy Eq. Jur. §§ 1398, 1399, and cases cited; *Pettit* v. *Shepherd*, 5 Paige, 493; *Carroll* v. *Safford*, 3 How. 441, 463; *Ward* v. *Dewey*, 16 N. Y. 519; *Mustain* v. *Jones*, 30 Geo. 951; *Martin* v. *Graves*, 5 Allen, 601: *Stout* v. *Cook*, 37 Ill. 283; *Clouston* v. *Shearer*, 99 Mass. 209; *Sullivan* v. *Finnegan*, 101 Mass. 447; *Anderson* v. *Talbot*, 1 Heiskell, 407; *Marsh* v. *City of Brooklyn*, 59 N. Y. 280; *O'Hare* v. *Downing*, 130 Mass. 16, 19. In *Pettit* v. *Shepherd*, it was held that a Court of Chancery might interpose to prevent the giving of a conveyance, under pretence of right, which would operate as a cloud upon the title to real estate. In *O'Hare* v. *Downing* it is said, that "a Court of Chancery will restrain by injunction a threatened levy of execution upon real estate which is not legally subject to such a levy, and thus prevent a cloud upon the title, without compelling the owner of the land to wait until the levy has been completed, and then admit himself to be disseised, in order to main-

tain a writ of entry." · Much more will it prevent a sale after a levy.

But it is contended that the Circuit Court had no authority to award or issue the injunction. The jurisdiction · of that court in this case is conferred by the " law relating to proceedings in bankruptcy ;" and we think the injunction was authorized by that law. The court of bankruptcy was authorized, by § 40 of the act of 1867, § 5024 Rev. Stat., where a petition in involuntary bankruptcy was filed, to restrain all persons, by injunction, from interfering with the debtor's property. The jurisdiction of suits in equity, given to the Circuit Court by § 2 of the act of 1867, § 4979 Rev. Stat., was given to it concurrently with the district courts. · It must be held that Congress, in authorizing a suit in equity, in a case like the present, has, in order to make the other relief granted completely · · effective, authorized an injunction, as necessarily incidental and consequent, to prevent further proceedings under the levies already made and new levies under the judgment. But for the supposed inhibitory force of § 720, a court of equity, in granting, on the merits, the other relief here granted, would necessarily have power to award the injunction. We think the Circuit · Court was authorized to award it here, within the exception in § 720.

It is urged, that the plaintiff should have made himself a party to the proceedings in the State Court, and have contested the matter there, under the authority given to him by § 14 of the act of 1867, (§ 5047 of the Revised Statutes), to · defend suits pending against the bankrupt at the time of the adjudication. As the assignment in bankruptcy was not made till October 1, 1874, and the judgment and the levy under the first execution were in May, 1874, we do not think the assignee was called upon to take any steps in the State court, after the assignment, to obtain relief. He was entitled to pursue the remedy he did.

The cases of *Krippendorf* v. *Hyde*, 110 U. S. 276, and *Covell* v. *Heyman*, 111 U. S. 176, are relied on by the appellant to show that the decree in this case was erroneous. The view urged is, that, by virtue of the levy by the sheriff, the State

court acquired custody, control, and jurisdiction of the property, which could not be disturbed by the Circuit Court. But the doctrine of those cases has no application in favor of the appellant, in a case like the present. In the first case it was held, that, after property had been attached by a marshal of the United States, on mesne process from a Circuit Court of the United States, a third person, claiming its ownership, could, without reference to citizenship, come into the Circuit Court for redress, by ancillary proceedings. In the second case, it was held, in pursuance of the decision in *Freeman* v. *Howe*, 24 How. 450, that possession of property by a marshal of the United States, under a writ of execution from a Circuit Court of the United States, could not be disturbed by virtue of a writ of replevin from a State court, issued by a third person. *E converso*, as was held in *Taylor* v. *Carryl*, 20 How. 583, property seized by a sheriff, under process of attachment from a State court, cannot be taken from the sheriff by initial admiralty process issuing from a District Court of the United States. But those were none of them cases where, under the bankruptcy act, an assignee in bankruptcy claimed a paramount title, and resorted to regular judicial proceedings to first vacate and declare void the adverse title, and sweep it away, and then have such final process in regard to the subject-matter of the title as should be necessary to make the decree effective. And, in *Covell* v. *Heyman*, the court, speaking by Mr. Justice Matthews, after explaining the point of the decision in *Freeman* v. *Howe* says : " The same principle protects the possession of property, while thus held by process issuing from State courts, against any disturbance under process of the courts of the United States; excepting, of course, those cases wherein the latter exercise jurisdiction for the purpose of enforcing the supremacy of the Constitution and laws of the United States." This exception includes the present case. The bankruptcy proceeding dissolved the State attachment, and the bankruptcy act conferred on the assignee a paramount title, which he was empowered, by that act, to enforce, by proper equitable remedies, in the Circuit Court, against the adverse title set up by virtue of the suit in the State court. *Decree affirmed.*