## In re MERTENS et al.

(District Court, N. D. New York. August 6, 1904.)

No. 1,527.

1. FEDERAL COURTS—BANKRUPTCY JURISDICTION—CLAIMS TO PROPERTY.

Under Bankr. Act July 1, 1898, c. 541, subc. 2, § 2, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], as amended by Act Feb. 5, 1903, c. 487, § 1, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 409], providing that courts of bankruptcy shall have such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings to cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, a court of bankruptcy has jurisdiction to try and determine the title to property found in the possession of the bankrupt, which had been purchased by and delivered to him, the sale not having been rescinded for fraud until after the bankruptcy proceedings had been instituted and the bankruptcy court had taken possession of the property.

2. SAME — BANKRUPTCY PROCEEDINGS — PARTIES—CLAIMS—PROSECUTION—FORUM.

Where the seller of goods, which had been delivered to the buyers prior to the institution of bankruptcy proceedings against them, rescinded the sale for fraud after the bankruptcy proceedings had been instituted, and applied to the court in which such proceedings were pending for leave to commence a replevin action for the goods in the state court against the receiver in bankruptcy, and after such petition was denied again applied for an order directing the receiver to set aside and hold the goods in question for petitioners which was also denied, such seller thereby became a party to the bankruptcy proceedings, and was bound to prosecute its claim to the goods in the court where such proceedings were pending.

3. SAME—INJUNCTION.

Such goods having been taken possession of by the bankrupt's receiver, and having been thereafter sold by such receiver as the bankrupt's trustee under order of court, such court had jurisdiction to grant an injunction restraining the claimant from prosecuting a suit against the trustee in a state court for conversion of the proceeds, under Rev. St. U. S. § 720, providing that an injunction shall not be granted by a court of the United States to stay proceedings in a state court except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy.

4. SAME—BANKRUPTCY PETITION—FILING.

The filing of a bankruptcy petition is notice to the world of the pendency of the proceedings, and operates as an attachment of the bankrupt's property, and as an injunction restraining all persons from intermeddling therewith.

5. SAME—ACTS OF TRUSTEE.

Where a bankrupt's receiver and trustee took possession of property in the hands of the bankrupt at the time the petition was filed, and the seller of the property to the bankrupt did not elect to rescind for fraud until after such proceedings had been instituted, the bankrupt's trustee was not liable to the seller for the conversion of the property or its proceeds by selling the same under order of the court of bankruptcy.

In Bankruptcy.

This is a motion by Albert K. Hiscock, as receiver and as trustee of the estate in bankruptcy of J. M. Mertens & Co., to restrain the American Woolen Company of New York from further prosecuting an action brought by said company against said Albert K. Hiscock as such receiver and as such trustee to recover damages for the alleged conver-

sion by said Hiscock as such receiver and as such trustee of certain woolen goods in the piece, sold by said American Woolen Company to said J. M. Mertens & Co., and which goods formed a part of the stock in trade of said J. M. Mertens & Co., and were in the possession of said company, commingled with other goods, at the time of the filing of the petition herein, and at the time of the appointment of such receiver by this court, and at the time he took possession of same as such receiver under and pursuant to the order of this court, and which possession was taken before notice was given any one that the sale thereof by the said American Woolen Company to the said firm of J. M. Mertens & Co. was rescinded. Said goods were sold by said trustee, it is alleged, with the consent of said American Woolen Company, and the proceeds are now in his hands, subject to the order of this court.

Lewis & Crowley, for receiver and trustee.
McGowan & Stolz, for American Woolen Co.

RAY, District Judge (after stating the facts). At some time prior to the commencement of the bankruptcy proceedings herein the American Woolen Company of New York, city of New York, sold on credit and delivered to J. M. Mertens & Co., a firm doing business in the city of Syracuse, N. Y., certain woolen goods in the piece, of the value of several thousand dollars. Said American Woolen Company had been selling goods to said firm for a considerable length of time, and there was an open running account between them, with a balance of several thousand dollars due the woolen company. The petition in involuntary bankruptcy herein was filed on the 20th day of August, 1903, and on the same day Albert K. Hiscock, of Syracuse, N. Y., was, by this court, duly appointed receiver of the alleged bankrupts' estate. Such receiver gave the bond required, and entered on the discharge of his duties by taking possession of all the property of the firm of J. M. Mertens & Co., and by proceeding to complete the manufacture of certain goods previously ordered by customers, and fill such orders; all pursuant to the order and direction of this court. The schedules required by law were duly made and filed. Thereafter, and on the 31st day of August, 1903, McGowan & Stolz, the attorneys for said American Woolen Company of New York, which is a corporation duly incorporated under and pursuant to the laws of the state of New York, served on said receiver a notice and demand, of which the following is a copy (omitting the schedule of goods):

"Take notice that the pretended sales of certain pieces of cloth, more particularly described in the schedule hereto annexed and marked 'A.' made by us to J. M. Mertens & Co., are rescinded on the ground of fraud perpetrated upon us by said J. M. Mertens & Co. in the purchase thereof, and we hereby demand the possession of such articles from you and of any and all suits, overcoats, and other articles of clothing into which the same may have been manufactured, or are in process of manufacture. And you will also take further notice, that we hereby demand that in case you shall have disposed of, or shall at any time hereafter dispose of, said pieces of cloth or any of them, or any of the suits, overcoats or other garments which may have been manufactured from the same, the proceeds thereof are our property and belong to us, and that you pay the same over to us, and that the said goods were obtained from us by fraud and

deceit, and that to the said property and the proceeds thereof neither you nor the said J. M. Mertens & Co. have any right or color of right.

"Dated, August 31, 1903.

"Yours &c., American Woolen Company of New York.

"To Albert K. Hiscock, Esq.,

"As Receiver of J. M. Mertens & Co.

"To J. M. Mertens & Co.".

The receiver did not comply with the demand, acting on the information and belief that such goods were not obtained by fraud, and that the title was in the bankrupt, and also on the theory that in reclamation proceedings the title to such property could and should be determined in this court, the same being in the possession of this court. Thereafter said American Woolen Company of New York applied to this court for leave to commence a replevin action for these goods in the state court. The application was denied. September 16, 1903, said J. M. Mertens & Co., and each of the individuals composing said firm, were duly adjudicated bankrupts by this court. On the 21st day of September, 1903, this court made an order, which was duly served on said McGowan & Stolz, attorneys for said American Woolen Company, restraining all persons, and particularly said company and its attorneys, from bringing any suit in the state court for said stock of goods, or any suit against said receiver regarding said property or estate. Said order was not appealed from, set aside, or vacated. The writ of injunction issued pursuant to such order was not served until after the action now sought to be restrained was commenced. October 6, 1903, said American Woolen Company applied to this court for an order directing the receiver to set aside and hold and not sell these goods in question. That application was denied, and no appeal was taken. Such proceedings were duly had that on the 14th day of October, 1903, said Albert K. Hiscock, then acting as receiver, was duly appointed the trustee in bankruptcy of the estates of said bankrupts. On qualifying as trustee, said Hiscock, as receiver, actually passed over to himself as trustee the said stock of goods, including those in question, which remained unsold and undisposed of, except so far as the bankrupts themselves had disposed of them prior to the filing of the petition in bankruptcy.

On the 4th day of November, 1903, the trustee received a very advantageous offer for the stock of goods—$67,500—and an order was made by Chas. L. Stone, the referee in bankruptcy, to whom this bankruptcy matter had been duly referred, directing a sale of such stock of goods, and same were sold accordingly. McGowan & Stolz, appearing as attorneys for said American Woolen Company, consented to such sale. By these proceedings the goods in question have been converted into cash by the trustee pursuant to the order of the court, and the proceeds are now in the custody of the court in bankruptcy. This order of the court to sell the goods at the price offered—substantially the price at which same were inventoried—was made and entered November 6, 1903, and the goods were immediately delivered to the purchaser. On the very next day, and November 7, 1903, a summons in an action in the Supreme Court of the state of New York was served

on the said Albert K. Hiscock as such receiver and as such trustee, of which the following is a copy:

"State of New York, Supreme Court, County of New York.

"American Woolen Company of New York v. Albert K. Hiscock as Receiver in Bankruptcy of J. M. Mertens & Co., and Albert K. Hiscock as Trustee in Bankruptcy of J. M. Mertens & Co.

"To the Above-Named Defendants: You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer on the plaintiff's attorneys within twenty days after the service of this Summons, exclusive of the day of service; and, in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

"Trial to be held in the County of New York.

"Dated this seventh day of November, 1903,

"McGowan & Stolz, Plaintiff's Attorneys,

"Office & P. O. Address, 339 Onondaga County Savings Bank Building, Syracuse, N. Y."

The plaintiff in such action is the same American Woolen Company of New York, before referred to, and the action is brought by the same attorneys hereinbefore named as appearing for such company in such prior proceedings, and who are under a restraining order, as stated. The bankrupts resided and had their place of business at Syracuse, in the Northern District of New York, in which district all of the proceedings in bankruptcy have been had, and where the said trustee resides, and where such property was situated and the proceeds are deposited. The plaintiff resides and has its place of business in the city of New York, in the Southern District of New York, and in said Southern District the venue of said action in the state court is laid.

Immediately after being appointed trustee, said Hiscock duly accounted as receiver, and his accounts were duly passed and settled, and he was directed to pay over all moneys and deliver all property held by himself as receiver to himself as trustee. No objection was made to this order, said American Woolen Company of New York being represented in that proceeding by said McGowan & Stolz as its attorneys. Such order has not been vacated, set aside, or appealed from, and its mandates were fully complied with. Owing to necessary delays, such order was not actually made and entered until after the commencement of such suit in the state court.

On this motion it is denied by the American Woolen Company of New York that McGowan & Stolz represented it when the order to sell the goods was made; but however that fact may be, the court is of opinion that the result is the same. It is conceded by said McGowan & Stolz, who represent the American Woolen Company on this motion, that this action in the state court is brought to recover damages for the alleged conversion by said receiver or trustee, as such, of the goods in question. Before considering the legal aspects of the case, it may be well to summarize the facts.

(1) Prior to the filing of the petition in bankruptcy herein, the American Woolen Company of New York sold and delivered the goods in question to J. M. Mertens & Co. on credit.

(2) On the 20th day of August, 1903, a petition in involuntary bankruptcy was filed in this court against said firm or copartnership of J. M. Mertens & Co.

(3) August 20, 1903, Albert K. Hiscock was duly appointed by this court in bankruptcy and in such pending proceeding the receiver of all the property and estate of said J. M. Mertens & Co., and directed to take possession of and hold the same which he did.

(4) The goods in question were then in the possession of said J. M. Mertens & Co. in their store, commingled with their other goods, and the sale to said company had not been rescinded, and such goods passed into the possession of said officer of this court, duly appointed, and were thenceforth, until sold, in the custody of this court.

(5) On the 31st day of August, 1903, said American Woolen Company of New York gave written notice that it then rescinded the sale of said goods to said J. M. Mertens & Co. on the ground that the contract of sale and the delivery of the goods were procured by fraud, and also demanded the goods, and the proceeds of such as had been sold, and the proceeds of the sale of any thereof thereafter sold by said receiver.

(6) The said receiver did not comply with such demand, or acquiesce in the claims of the woolen company.

(7) The said woolen company then applied to this court in bankruptcy for leave to prosecute an action of replevin for said goods, which motion was denied. Said company also applied to the court for an order directing the said receiver to set apart and hold said goods in question, and not sell same. This application was denied. No appeal was taken from said orders.

(8) Thereafter said Albert K. Hiscock, who was acting as such receiver, was duly appointed trustee in bankruptcy of all the property, etc., of said J. M. Mertens & Co. and of the individual members of said firm, they having been duly adjudicated bankrupts on the 16th day of September, 1903. The possession of said property then passed to the trustee. Subsequently a formal order was made by this court directing the transfer of the possession of such property, including the proceeds of the sale of the property in question.

(9) The said trustee, having received an advantageous offer for the entire stock of goods of said J. M. Mertens & Co., including the goods in question, was authorized and directed by this court to sell such goods. Said order was complied with, and the goods were paid for, and the purchase money deposited in one of the designated depositories to the credit of said trustee, where it now remains.

(10) Said American Woolen Company has not taken any proceeding in this court to determine the title to the goods in question or the title to the proceeds thereof.

(11) The day after such sale was consummated said American Woolen Company commenced an action in the Supreme Court of the state of New York against said Albert K. Hiscock as such receiver and as such trustee to recover damages for the alleged conversion of such goods claimed by said woolen company, the claim being that the sale to J. M. Mertens & Co. was induced and procured by fraud, that same was voidable, and was rescinded, and that title did not pass to J. M. Mertens & Co. and hence did not pass to the receiver or to the trustee, and that by selling such goods even under and pursuant to the order of this court said officer was guilty of a conversion thereof.

In this summary of the facts all reference to the injunction order and the alleged consent of said woolen company to the sale is purposely omitted. The said Albert K. Hiscock has done no act in reference to the property in question or its proceeds not sanctioned, approved, and directed by the bankruptcy court. He took possession of, held, and sold same under and pursuant to the orders and directions of the court having the custody of the property and the control of said Hiscock, its duly appointed officer. Said American Woolen Company, the claimant, and also the plaintiff in said action for conversion, had the right to appeal to this court in reclamation proceedings for the surrender and delivery to it of said property, and still has the right to appeal to this court for the surrender and delivery of the proceeds thereof. Said company takes no such action, or any action, in this court, but sues the officer of this court in the state court and in the Southern District of New York, charging that he was guilty of a conversion of its property when he followed the instructions and obeyed the orders of this court. If the action is maintainable, and cannot be restrained and enjoined by this court, its action in the premises heretofore taken is, in effect, to be reviewed, and, it may be, pronounced null and void, or at least illegal, by one of the courts of the state of New York. These goods had been sold and delivered to J. M. Mertens & Co., and mingled with their stock in their general store in Syracuse. Apparently they were the property of said J. M. Mertens & Co. The sale had not been rescinded when proceedings in bankruptcy were instituted, when the receiver was appointed by this court, and when possession of the property was taken by this court. This court has at all times asserted its jurisdiction over the property, and its power and right to determine the title thereto and the validity of all adverse claims. It has not granted any order permitting its officer to be sued in any other court, but has steadily denied all such applications. It went further, and made an order restraining and enjoining all actions in the state court that would interfere with this property or its proceeds. Having come into this court on at least two occasions—once with a motion for leave to prosecute a replevin action in the state court for this property, and again for an order to have the property in question set aside, and not sold—the American Woolen Company is not in a position to assert that it has not made itself a party to these bankruptcy proceedings. It has twice submitted itself and its claim to this property to the jurisdiction of this court. The Revised Statutes of the United States expressly provide that:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Rev. St. U. S. § 720 [U. S. Comp. St. 1901, p. 581].

The Constitution in express terms confers upon Congress the power to enact uniform laws on the subject of bankruptcies, and in the exercise of this power Congress has conferred on the courts in bankruptcy the power to grant injunctions and appoint receivers and trustees of the estates of bankrupts. The laws of the United States passed pursuant to the Constitution are paramount, and suspend the operation of all

state laws on the same subject or in conflict with the national laws when invoked. When property sold to the bankrupt prior to proceedings in bankruptcy is found in his possession, mingled with his stock in trade or other property, it is presumably his, and when the bankruptcy court has taken possession of it and assumed control through its duly appointed receiver before a rescission of the sale, the vendor who assumes thereafter to rescind the sale on the ground of fraud practiced by the vendee (now the bankrupt), and who seeks to recover the property or its proceeds, or damages from such officer of the court who has held and sold it pursuant to the order of the court, should be compelled to come into the court having the possession and control of the property, and try the question of title thereto there, unless that court is without jurisdiction to try the question, or the law of the United States has expressly placed concurrent jurisdiction elsewhere. If the court should find that the sale was procured by fraud, then the rescission would be valid, and the title would be in the vendor, and he would be entitled to the property, or its value, from the estate of the bankrupt, and this court would so award; but, should the court find that such sale was not procured by fraud, then the rescission would be of no avail, and the title would be in the trustee in bankruptcy when appointed. Is not the bankruptcy court, in possession of the property, possessed of power and jurisdiction to try and determine this question? Or must it await the trial and determination of a suit for conversion against its officer in the state court before proceeding to administer the trust and wind up the bankruptcy proceedings? It is conceded that in such a case as this the bankruptcy court may enjoin an action in replevin in the state court against the receiver or trustee to recover the property. Why may it not enjoin an action in trespass, or for conversion brought against the receiver or trustee in bankruptcy in the state court to recover the proceeds of a sale of the property or its value as damages for a conversion, based on the claim that the title was in the vendor? Does the one action interfere with the property or the proceedings in the court of bankruptcy any more or any less than the other? If so, wherein? Section 720, Rev. St. U. S., above quoted, recognizes the paramount authority of the bankruptcy laws in such a case, and does not attempt to forbid the enjoining of suits in a state court by the federal court as against a provision of the federal laws permitting such action. This property in question here was included in the trust committed to the receiver, and then to the trustee. It was a part of the trust estate. The American Woolen Company attempts to take it out of the trust and from the jurisdiction of the court in bankruptcy by rescinding the sale after such jurisdiction was obtained and asserted by this court. If the sale by the woolen company was procured by fraud, then this court should order the trustee to pay to it the value of the property; otherwise it should not. Must this receiver and trustee litigate this question of fraud in the state court and in another judicial district of the United States? Clearly, it seems to this court the question may be fully determined by the bankruptcy court.

Section 2 of subchapter 2 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], as amended Feb-

131 F.—33

ruary 5, 1903, c. 487, § 1, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 409]) defines the jurisdiction of courts of bankruptcy, viz.:

"That the courts of bankruptcy as hereinbefore defined, * * * are hereby made courts of bankruptcy, and are hereby invested, within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms as they are now or may be hereafter held, to * * * (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Here clearly is jurisdiction to try and determine the title to property found in the possession of the bankrupt purchased by and delivered to him, and which sale is sought to be rescinded for fraud after the bankruptcy proceedings have been instituted and after the bankruptcy court has taken possession of the property. Clearly, this is a controversy in relation to the estate of the bankrupt. In vain we search the act for a provision that deprives the bankruptcy court of power to determine such a controversy regarding the title to the property.

It would seem equally clear that the action of the American Woolen Company in rescinding the sale after the petition in bankruptcy was filed is an attempt to divest the title of the trustee in bankruptcy. Section 70 of the Bankruptcy Act, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], provides:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, * * * to all * * * property which prior to the filing of the petition he (the bankrupt) could by any means have transferred or which might have been levied upon and sold under judicial process against him."

This property in question the bankrupt could have sold and transferred, giving good title, at any time before the petition was filed. It is, of course, true that if the property was obtained by fraud the woolen company had the right to rescind the sale, and recover the property, or its proceeds, or damages for its conversion, if converted. In such case the title of the trustee would be subordinate to that of the woolen company. But the question of the right to the property, its possession and disposition, and also the disposition of its proceeds, depends on this question of fact, which the courts of the United States are as competent to try and determine as are those of the state; and, having the custody of the property and its proceeds, and jurisdiction to determine the title thereto, this court will not permit the state court to intermeddle either with the property, its proceeds, or with the officer who has disposed of it by order of the federal court. Freeman v. Howe, 24 How. 450, 16 L. Ed. 749. And this court has no hesitation in holding that in this case neither the receiver nor the trustee has been guilty of a conversion or wrongful disposition of the property in question. The conversion, if any, or wrongful disposition of the property, if any, has been committed by this court in bankruptcy, for it has ordered and directed and approved these acts of its officers complained of, and alleged to constitute a conversion of the property, in proceed-

ings duly had in this court, with the American Woolen Company present in court by counsel, and also by petition made by it, asking other disposition of the property than that made by the court. The defendants in the suit in the action in the state court, sought to be restrained, have done no act not directed by the court. If the authority and jurisdiction of this court in bankruptcy is paramount and superior to that of the state court, and it has jurisdiction to determine conflicting claims to property forming a part of the estate of the bankrupt at the time the petition in bankruptcy is filed (and this property concededly was a part of the property of the bankrupt at that time, for the sale had not been rescinded), then this action in the state court should not be permitted to proceed further, for a judgment that either the receiver or trustee has converted this property would be an adjudication by the state court that this court in bankruptcy had no authority or jurisdiction to direct its officers to take possession of and sell the property. The sale to the bankrupt was not void; only voidable. 14 Am. & Eng. Enc. Law, 156; Foreman v. Bigelow, 4 Cliff. 508, Fed. Cas. No. 4,334; Cobb v. Hatfield, 46 N. Y. 533; Gould v. C. C. N. Bank, 86 N. Y. 75; Baird v. New York, 96 N. Y. 567.

This court cannot assent to the doctrine that its trustee in bankruptcy is liable to an action in the state court as for trespass, trover, or conversion, when he follows the order of the court in disposing of property in its possession. This is not a case where the receiver or trustee has taken and held and disposed of property which was outside of the possession and control and apparent ownership of the bankrupt at the time of the filing of the petition in bankruptcy, in which case this court should not and would not interfere. In such case the officer of this court would act on his own responsibility, and take his chances.

In Re Gutman & Wenk, 8 Am. Bankr. R. 255, 114 Fed. 1009, Adams, District Judge, said:

"Ordinarily, where the receiver of the court has merely general directions to take into his possession the property of the bankrupt, and there is a claim that he has taken the property of a third person, the court, in conformity with general principles, would leave him to answer in any proper forum for his individual acts (Buck v. Colbath, 3 Wall. 334 [18 L. Ed. 257]; Covell v. Heyman, 111 U. S. 176 [4 Sup. Ct. 355, 28 L. Ed. 390]; McNulta v. Lochridge, 141 U. S. 327 [12 Sup. Ct. 11, 35 L. Ed. 796]; Central Trust Co. v. East Tenn., V. & G. Ry. Co. [C. C.] 59 Fed. 523; High. Inj. § 298; Hale v. Bugg [C. C.] 82 Fed. 33); but where it appears without dispute, as it does here, that the third party cannot possibly have any legal rights to be established by the litigation in the state court, and the result of permitting it to be continued would not only suffer an injustice to the receiver, but indirectly tend to embarrass this court in administering the estate, the equitable powers of the court should be exercised both for the prevention of the injustice and to protect the court's full jurisdiction. Dietzsch v. Huidekoper, 103 U. S. 494 [26 L. Ed. 497]; Chapman v. Brewer, 114 U. S. 158 [5 Sup. Ct. 799, 29 L. Ed. 83]; Garner v. Second Nat. Bank of Providence, 67 Fed. 833 [16 C. C. A. 86]; James v. Central Trust Co., 98 Fed. 489 [39 C. C. A. 126]; Mueller v. Nugent [184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405], 7 Am. Bankr. R. 224."

In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, 7 Am. Bankr. R. 234, it was decided:

"It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and, in effect, an attachment and injunction (Bank v. Sherman, 101 U. S. 407 [25 L. Ed. 866]); and on adjudication title

to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court."

So here the filing of the petition in bankruptcy was notice to all the world of the pendency of the proceeding, and, in effect, an attachment of this property, and an injunction against all persons prohibiting them from intermeddling with it. This court took immediate custody of the property through its receiver.

In Mueller v. Nugent, supra, the bankrupt had delivered, shortly before the petition was filed, property to a third person, who had no adverse claim to it; and he refused to deliver it to the trustee. In the summary application to compel this third person to deliver the property the Supreme Court said, referring to the necessity of a suit in the circuit or state court:

"If it be so, the grant of jurisdiction to cause the estates of bankrupts to be collected, and to determine controversies relating thereto, would be seriously impaired, and in many respects rendered practically inefficient. The bankruptcy court would be helpless, indeed, if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law."

Here we find not only a direct affirmance of the power of the bankruptcy court to determine conflicting claims to property in the possession of the court, actually or constructively, but a condemnation of the theory that in case of dispute as to title the bankruptcy court should be subjected to the expense, delay, and embarrassment incident to the settlement of that question in some other tribunal—as the state court. It is well known that this action brought in the state court against this receiver and trustee cannot be reached for trial in New York county in less than two or three years, and to permit it to proceed would delay the settlement of this bankrupt estate for years. The whole question may be determined in this court, even allowing for an appeal to the Circuit Court of Appeals, in a few months.

The case last cited is direct authority, in effect, for the proposition that adverse claimants to property in the hands of the bankrupt at the time of the filing of the petition, and claimed by him, and apparently his, should try the question of title in the bankruptcy court. The federal court should not permit an evasion of this rule by allowing the adverse claimant to lie still until the property is disposed of by the trustee, and then prosecute an action of trespass or trover in the state court. It is the duty of the federal court to protect its officers in such a case as this from the annoyance and expense of such suits in the state court, as well as the possible injury both to the officer and the creditors of the bankrupt. No warrant for permitting the prosecution of such suits in the state courts, under such circumstances as exist here, is found in any well-considered case.

The motion is granted, and an order will be entered restraining the plaintiff and its attorneys by name from taking further proceedings in the action referred to.