## Harsh v. Willard.

*Bankruptcy—Trustee's sale—Bankrupt's possession of personal property not owned by him—Jurisdiction of Federal court—Suit against trustee.*

1. When, in brankruptcy proceedings, a controversy arises as to the ownership of property found in the actual possession of the bankrupt when the adjudication took place, the State courts are without authority to determine the title. The jurisdiction is exclusively in the Federal court.

2. If, in the performance of his duties, a trustee in bankruptcy is directed to sell, and does sell, personalty, which in fact was not the property of the bankrupt, he cannot be sued in a State court without leave of the Federal court.

Rule for judgment notwithstanding verdict. C. P. Chester Co., Jan. T., 1923, No. 163.

*W. S. Harris*, for plaintiff; *Gheen & Troutman*, for defendant.

HAUSE, J., June 18, 1923. — The facts developed at the trial are these: Emanuel W. Harsh, plaintiff's father, some years prior to April 15, 1922, became the owner of a farm in Londonderry Township, this county. After its purchase he operated it with his stock, farming utensils, &c., until April 1, 1922. During his ownership and operation the plaintiff, then a minor, lived with him, and as a member of the family assisted in the farm work. Plaintiff alleged and sought to prove that, in the latter part of 1919 or early in 1920, his father agreed to pay him $40 per month as wages if he would remain on the farm. He was then a minor. Plaintiff remained, continued to work, but received no part of the agreed compensation, and by April 1, 1922, there was alleged to be due him $960. On Feb. 2, 1922, the father signed and delivered to plaintiff a paper which reads: "I hereby sell to Parke H. Harsh my entire personal property, received payment in full." On this same date plaintiff testified that he had verbally leased the farm from his father for a year from April 1, 1922. He had then reached his majority.

No change of possession of either farm or personal property took place at the time of or after this alleged sale and lease. The defendant, for several years prior thereto, had been, and then was, a creditor of plaintiff's father in the sum of $4000, secured by bond and mortgage, upon which both principal and interest were in default.

In the fall of 1922 the father advertised the farm to be sold at public sale on Dec. 5th, and plaintiff advertised a sale of the personalty for the same date. On Nov. 29, 1922, defendant entered judgment on his bond, issued a *fi. fa.*, and a levy was made on all personalty on the farm, including 7000 feet of lumber which plaintiff claimed his father had given to him when he (plaintiff) was but seventeen years of age, and which had been cut, sawed and piled on the farm. Following the levy, plaintiff filed with the sheriff a claim to the personalty, and at the trial alleged that it was worth $1600. A few days later the father filed a petition in the Federal court in voluntary bankruptcy. This was, in due course, referred to the referee for this district. The necessary meetings were held by the referee, at which were present the plaintiff, the bankrupt and creditors. The bankrupt scheduled as assets only the real estate.

The referee proceeded to and did determine that the personal property here involved was in the actual possession of the bankrupt at the time his petition was filed, and so remained. Appraisers were then appointed, the personalty was appraised, the defendant here was selected as trustee, was duly qualified, and in due course, under an order issued by the referee, he sold the personalty and accounted for the proceeds in the bankruptcy proceedings.

At the first hearing before the referee the plaintiff, through his counsel, announced that they did not propose to submit the question of the ownership of the personalty to the referee for determination, but would pursue another remedy in the event that the trustee interfered with the property.

Immediately following the trustee's sale, plaintiff brought this action in trespass against the trustee, naming him in his individual capacity, to recover the value of the personalty sold.

At the trial we submitted to the jury the question as to whether or not the alleged employment of plaintiff by his father and the sale of the personalty to him had any foundation in fact, or whether it was a scheme set up to defraud the father's creditors. The jury found that the employment had never occurred, and that there never was any indebtedness due from father to son, and that the alleged sale of the personalty was fraudulent.

As respects the lumber, the jury found that it was the property of the plaintiff and gave him a verdict for its value, $280; finding as a fact, however, pursuant to our request to pass upon the question, that at the date of the adjudication in bankruptcy and the appointment of defendant as trustee this lumber was, and always had been, in the possession of the bankrupt.

Inasmuch as the jury's finding establishes this fact of possession in the bankrupt, defendant asks that judgment be entered for him notwithstanding the verdict, on the ground that plaintiff's remedy to determine the ownership of the lumber should have been pursued in the Federal court.

An examination of the various provisions of the Federal Bankruptcy Act and the pertinent decisions satisfies us that the jurisdiction to determine the question of ownership of the lumber was exclusively in the Federal court. When in bankruptcy proceedings a controversy arises as to the ownership of property found in the actual possession of the bankrupt when the adjudication takes place, the State courts are without authority to determine it. The plaintiff could not have maintained replevin here to recover the property involved (White v. Schloerb, 178 U. S. 542), nor was it within the power of the trustee (defendant) to have voluntarily delivered the lumber to plaintiff, however well satisfied of plaintiff's title and ownership he may have been: Whitney v. Wenman, 198 U. S. 539.

The referee in bankruptcy in due course found as a fact that at the time of the adjudication of plaintiff's father a bankrupt, he (father) was in possession of the lumber, and the jury here similarly found, and the effect of the adjudication was to transfer this possession to the trustee (defendant) as the representative of the court: Robertson v. Howard, 229 U. S. 254. With possession in the bankruptcy court, the legal situation was this: "The property was thereby withdrawn from the jurisdiction of all other courts. The court having possession of the property has an ancillary jurisdiction to hear and determine all questions respecting the title, possession or control of the property. The jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts:" Murphy v. Hofman Co., 211 U. S. 562; Weidhorn v. Levy, 253 U. S. 268.

It results, therefore, that plaintiff may not recover in this proceeding.

Aside from the question just determined, it is more than doubtful whether we have jurisdiction of the defendant in view of the facts. Though sued in his individual capacity, he was, as respects the entire transaction, acting under and by virtue of the order of the Federal court. Possession of the property had been given to him pursuant to the order of the referee in bankruptcy; the property was appraised and sold by direction of the same official.

4 D. & C.

Harsh *v.* Willard.

If, in the performance of his duties, a trustee is directed to sell, and does sell, personalty which, in fact, was not the property of the bankrupt, he cannot be sued in a State court without leave of the Federal court, and such leave was not obtained: In re Mertens, 131 Fed. 507.

The prothonotary is directed to enter judgment for the defendant notwithstanding the verdict.

From Truman D. Wade, West Chester, Pa.