## PIEDMONT COAL CO. et al. v. HUSTEAD et al.*

### In re THOMPSON.

(Circuit Court of Appeals, Third Circuit. November 2, 1923. Rehearing Denied December 31, 1923.)

Nos. 3011, 8790.

1. **Bankruptcy ⊙⟹262(3)—Court's power to sell free of liens does not extend to valid pre-existing attachment liens.**

The power of the bankruptcy court to sell free of liens property in its control does not extend to property coming into possession and control of a state court in attachment suits more than four months before the bankruptcy, since the jurisdiction of the state court to dispose of property in its possession is exclusive, and the bankruptcy court's order for sale free of liens did not, therefore, affect valid pre-existing attachment liens.

2. **Subrogation ⊙⟹28—Surety entitled to subrogation, if he pays debt for which he is ultimately liable.**

A surety is not entitled to be subrogated to the claim against his principal, unless he has discharged his obligation in full; but this does not mean that he must pay the whole debt for which he became surety, but only the debt for which he is ultimately liable.

3. **Bankruptcy ⊙⟹217(3)—Court may not enjoin enforcement of valid judgment liens by persons not parties to bankruptcy proceeding.**

A court of bankruptcy is without power to enjoin enforcement of liens obtained in a state court by attachment more than four months prior to the bankruptcy proceeding by persons who were not parties thereto.

4. **Bankruptcy ⊙⟹268—District Court without jurisdiction to enjoin suit in state court to protect purchaser of bankrupt's property.**

The federal District Court is without jurisdiction to grant an injunction staying a suit in a state court to protect the interests of a purchaser of property at a bankrupt sale.

Buffington, Circuit Judge, dissenting.

· Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

In the matter of Josiah Van Kirk Thompson, bankrupt. Suit by the Piedmont Coal Company and another against James Edgar Hustead and others. From a decree granting a motion to dissolve a temporary injunction and dismissing plaintiffs' petition (288 Fed. 385), plaintiffs appeal. Affirmed.

See, also, 276 Fed. 313; 284 Fed. 65.

Frank W. Nesbitt, of Wheeling, W. Va., and Wm. E. Hague, Wm. M. Robinson, Wm. A. Seifert, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa. (George Wharton Pepper, of Philadelphia, Pa., of counsel), for appellants.

Roy G. Bostwick and Earl F. Reed, both of Pittsburgh, Pa., and Jay T. McCamic and McCamic & Clarke, all of Wheeling, W. Va. (Charles McCamic and Jas. Morgan Clarke, both of Wheeling, W. Va., of counsel), for appellees.

R. E. Umbel, of Uniontown, W. Va., Waitman H. Conaway, of Fairmont, W. Va., and Weil, Christy & Weil, of Pittsburgh, Pa. (A. Leo. Weil, of Pittsburgh, Pa., of counsel), for trustees in bankruptcy.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This is one of many actions growing out of the bankruptcy of Josiah Van Kirk Thompson which have occupied the courts in Pennsylvania and West Virginia for years. It was instituted by the Piedmont Coal Company and the Ayrshire Corporation, purchasers of the bankrupt's land at trustee's sale, to restrain further prosecution of two suits previously brought against the bankrupt in the state courts of West Virginia and to enjoin the enforcement of their liens. On final hearing the District Court entered the decree here appealed from, ordering that the preliminary injunction theretofore granted be dissolved and the petition upon which the injunction was issued dismissed.

We should be content to affirm the decree on the opinion of the District Court were it not for the evident belief of counsel that the decision involves grave error and works great injustice. We shall therefore subject the case to the test of an opinion written in another way. In doing so we shall state only the main facts of this long story and then only in connection with our discussion, availing ourselves of the statement of the case made in sufficient detail by the learned trial judge in his opinion reported at 288 Fed. 385.

On the argument, here and evidently in the District Court, there was elaborate discussion concerning rights, legal and equitable, of a variety of parties—trustees in bankruptcy, purchasers at bankruptcy sales, creditors, suitors in state actions, assignees, sureties, subrogees. We believe that much of the resultant confusion will be dispelled when it is realized that the Piedmont Company, plaintiff in this action, must prevail, if at all, on its own right to the remedy it seeks. This is the starting point, and the point from which, looking backward, we shall view the case in all its aspects.

[1] The two suits against Josiah Van Kirk Thompson, the enforcement of whose liens the Piedmont Company seeks to enjoin, were instituted in West Virginia courts in 1915, one by the National Bank of West Virginia, wherein several thousand acres of coal lands were attached, and the other by Beeson H. Brown, wherein several hundred acres were attached. J. M. Hustead was surety for Thompson on the obligations on which both suits were brought. In each suit lis pendens was filed giving notice to purchasers under the law of West Virginia. In 1916, decrees in rem for named amount were entered. Clearly, by these proceedings the courts of West Virginia acquired full jurisdiction and control of the properties attached. These properties were in custodia legis in every sense and if nothing else had happened the plaintiffs certainly could have prosecuted their decrees to execution and sale. But two things happened: One, Thompson in September, 1917, was adjudged a bankrupt; the other, shortly thereafter all attaching creditors in West Virginia were enjoined from further prosecuting their suits. The validity of that injunction, though challenged, has not been determined. It was effective, however, in staying action on these and many other attachments beyond the period when, two years later, all the bankrupt's properties were sold by his trustees. With that injunction we have no present concern except to observe that, having held the hands of the plaintiffs in the state courts, it drove them to action in the bankruptcy court. That action, however, was negative, and was taken only when the bankruptcy court had under consideration the sale, free of liens, of the lands attached in their two suits.

This contemplated action by the bankruptcy court grew out of a proposition made by the Piedmont Company to the trustees in June, 1919, to purchase at private sale the property of the bankrupt free and clear of taxes, attachments and other liens. The offer was accepted by the trustees and referred to the referee. While pending there the National Bank and Brown appeared specially, filed proofs of claim for the full amounts due on their West Virginia decrees, Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, and objected to the sale of the bankrupt's lands free of their liens on the ground that as the state courts of West Virginia had more than four months prior to bankruptcy acquired complete jurisdiction and control over the property of the bankrupt thereby attached, they were not divested of their jurisdiction by the bankruptcy of the debtor nor was their jurisdiction capable of being stayed or arrested by the injunctive process of the District Court in which bankruptcy proceedings were pending. Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128. In other words, the plaintiffs in the state suits chose to stand on the security of the liens which the state courts had given them. On the authorities cited we have no doubt they had a right to do so. As many other creditors whose West Virginia attachments had been stayed by the injunction then pending were taking the same position, the trustees and other parties who were endeavoring to carry into effect the proposition of the Piedmont Company—one admittedly favorable to the general administration of the estate—grew apprehensive and after long negotiations acquired

the consent of all West Virginia attachment creditors (except the two here named) to a sale of lands covered by their liens free and discharged therefrom. Their consent was obtained on a promise to pay 90 per cent. of their claims. Whereupon a decree was entered, in effect a consent decree, approving the sale of the bankrupt's lands to the Piedmont Company free and discharged of liens with a provision for the liens to follow the purchase money. This decree of confirmation provided that in the schedule of distribution the decrees of Brown and the Bank should be excepted unless later they should elect to accept the dividend of 90 per cent. agreed upon by the other creditors. Later the sale was made and completed on the payment of the purchase money by the Piedmont Company and the delivery of deeds by the trustees.

It is to be noted that this was a sale of real property ostensibly free and discharged of all liens. Keeping in mind that the Piedmont Company, to obtain the remedy it seeks, must stand on its own rights, we stop here to inquire whether in the sale of lands by the bankruptcy court the purchaser acquired the lands free of the liens of the decrees of Brown and the Bank. The Piedmont Company says it did, advancing the proposition that a bankruptcy court has jurisdiction to sell the property of a bankrupt free and discharged of liens and to transfer the same to the fund realized from the sale. There can be no doubt about this general proposition of law when the property is within the jurisdiction of the bankruptcy court. The cases sustaining it are too numerous to require citation. But possession is the test of jurisdiction. The case of Murphy v. John Hofman Company, 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327, is a late authority for the old rule, applicable to all courts—neither excepting nor favoring courts of bankruptcy—that "where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. * * * The jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them. Wabash Railroad v. Adelbert College, 208 U. S. 38, 54, 53 L. Ed. 279, 386, 28 Sup. Ct. 182." Accordingly, it was held that "where property was in the possession of the bankrupt at the time of the appointment of a receiver, * * * the bankruptcy court had jurisdiction to determine the title to it as against an adverse claimant."

But the power of a court of bankruptcy to sell, free of liens, property which has come into its control by reason of title and possession derived by the trustee from the bankrupt does not extend to property whose possession and control has been acquired by another court more than four months before bankruptcy. Here the principle of Metcalf v. Barker and Pickens v. Roy enters. And when a state court has thus acquired possession of property by seizure, its jurisdiction, on authority of Murphy v. John Hofman Company, is exclusive of the jurisdiction of all other courts including courts of bankruptcy and it may proceed thereon to final disposition. If this were not so and if the proposition here made that all property of the bankrupt may be

sold free of liens, whether in process of enforcement by other courts or not, then the jurisdiction of the court of bankruptcy would be paramount to that of all courts and there would be neither occasion nor reason for the law announced in Metcalf v. Barker, Pickens v. Roy, Murphy v. John Hofman Company, supra; Griffin v. Lenhart (C. C. A.) 266 Fed. 671; Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Pickens v. Dent, 106 Fed. 653, 45 C. C. A. 522. Of course, all that statement means is that a court of bankruptcy may sell free of liens property which is within its possession and therefore within its jurisdiction, for obviously it cannot sell free of liens property which is in the exclusive control of another court.

We are therefore satisfied that, although by its order of sale and decree of confirmation the bankruptcy court purported to authorize the sale of the bankrupt's lands clear and free of the two liens in question, they were not sold free of those liens.

[2] Though not sold free of the liens of the Brown and the Bank decrees, the next question is whether, on the following facts, the liens still exist:

After Brown and the Bank had filed with the referee in bankruptcy proofs of claim for the amounts of the state decrees, Hustead, the surety, paid them something less than one-half of each claim. Notice of the payment by the surety on account of the bankrupt's indebtedness to the Bank was given the referee before the order of sale, together with notice that Hustead objected to the sale and claimed the rights of a subrogee. Brown did not notify the referee of Hustead's payment in reduction of his claim. It is manifest, however, that somehow and at sometime the trustees and the referee were informed of Hustead's payments on both claims for it later transpired that, in an amendment to its order, the court ascertained and decreed "the balance due" on each of the listed claims to be the difference between the principal sum and the amount paid by Hustead, the surety. Finally, the Piedmont Company paid the trustees the purchase price sufficient to cover 90 per cent. of the amounts of all listed claims including those of Brown and the Bank as amended, but not enough to cover the amounts previously paid thereon by Hustead. In fact no provision was made for taking care of Hustead. Later, Brown and the Bank, having a change of view, withdrew their objection to the sale and accepted payment upon the agreed terms of 90 per cent. of their claims as reduced and listed, and at the same time assigned to the Piedmont Company all their "right, title and interest" in the decrees in the West Virginia courts. Thus arose the question whether the liens still exist. They do not exist if the assignments by the plaintiffs conveyed to the Piedmont Company *all* right, title and interest in the state decrees for, as the Piedmont Company then owned the lands on which the liens had rested, they became merged in the title and disappeared.

But Hustead claims that he is a subrogee of Brown and the Bank to the extent of his payments of suretyship and that his right of subrogation in the West Virginia decrees could neither be sold nor assigned away from him, and, therefore, the liens pro tanto still exist. On the record this is so if Hustead was in equity a subrogee of the

plaintiffs in the West Virginia decrees. Just here arises the most acute phase of the controversy.

On this issue the Piedmont Company asserts that on general principles the equitable right to subrogation is predicated on the payment by the surety of his principal's debt in full, Pennsylvania Company v. Philadelphia Company (C. C. A.) 266 Fed. 1; and Hustead asserts that under a particular provision of the Bankruptcy Act (section 57i [Comp. St. § 9641]), a surety who has, "in whole or in part," discharged the indebtedness of his principal may file a claim in the name of the creditor and "be subrogated (to his rights) to that extent."

The theory on which we have arrived at our decision in this case calls for very little consideration of what counsel regard as one of the major issues. We shall, therefore, do no more than inquire if the record shows prima facie a case of subrogation.

No one questions the general principle of subrogation at the bottom of which lies the fact that in order to invoke it the surety must have discharged his obligation in full. This does not mean that in every instance he shall pay the whole debt for which he became surety. It means that he shall pay the whole debt for which, under his obligation of suretyship, he ultimately is liable. If the principal pays a part of the debt and the surety pays the balance and no rights of others intervene, then, obviously, the surety is subrogated to all the benefits which the creditor had against the principal to the extent of his payment. 37 Cyc. 408. This is plainly so, because, when the debt due a creditor is in part discharged by the debtor, or, as in this case, by the trustees of the debtor with money received from the sale of the debtor's lands, the danger of putting a surety who has paid the balance on a plane with an unpaid secured creditor, if subrogated pro tanto, disappears. Chamberlain v. Walter (C. C.) 60 Fed. 788. On the West Virginia decrees Hustead was primarily liable for their respective full amounts. But parts of these amounts were paid and to that extent the decrees were satisfied by the trustees of the bankrupt principal with money they had received from the Piedmont Company in the purchase of his lands. The parts of the amounts due on the two decrees which were not thus paid and discharged by the bankrupt principal were paid and satisfied by Hustead. This was the measure of his liability; less, it is true, than his original liability. It was, however, his ultimate liability, and this liability he met in full. What he paid, plus what the trustees paid with the purchase money of the Piedmont Company, made the Bank and Brown whole and paid in full the debts owing them. True, on the balance of their claims as listed, they received but 90 per cent. but that was at their election and was their affair. That they did so without the consent of the surety and without claim of right to call upon him for the 10 per cent. they threw off seems evidenced by the fact that they have not, so far as the record shows, called upon the surety to pay it. Thus it may be that Hustead, having discharged his obligations according to their tenor and having paid thereunder all he was called upon to pay, is subrogated to the plaintiffs in the West Virginia decrees. Therefore it appears to us that Hustead has made at least a prima facie case of subrogation. But whether he

has or not, our concern is not with Hustead's right to be subrogated as party plaintiff in the West Virginia suits, for that is a matter for the West Virginia courts; our concern is with the right of the Piedmont Company to maintain its petition, keeping always in mind that the Piedmont Company must prevail, if at all, on the strength of its own rights.

This brings us to the petition in the present suit on which a preliminary injunction was issued and later dismissed by the decree appealed from.

[3] As Hustead had died, this petition was filed against his personal representatives who had appeared in the courts of West Virginia on petition to be made parties plaintiff in the West Virginia decrees by reason of their claimed rights of subrogation at about the time the Piedmont Company, as assignee of Brown and the Bank, had appeared to move the dismissal of the decrees. The Piedmont Company and the Ayrshire Corporation came into the District Court as purchasers of the lands at bankruptcy sale and asked that the Husteads be restrained from further prosecuting their suits in the West Virginia courts on the ground that the action of the Husteads, if persisted in, would defeat the decree of the bankruptcy court ordering and confirming the sale of the bankrupt's lands free of liens. To this end they asserted that the district court has jurisdiction to enforce and effectuate its decree of sale by injunctions or writs of assistance in order either to avoid relitigation of questions once settled between the same parties, Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123, or to protect its decrees from unwarranted attack. There is scarcely a limit to the cases supporting this general proposition but we think it does not apply to the instant case because the Husteads had not been parties to the bankruptcy proceedings and, in consequence, their rights had not been litigated there, nor did the decree there entered extend to them because the decrees of the West Virginia courts, to the rights of whose plaintiffs the Husteads claim to have succeeded, antedate the bankruptcy proceedings by more than four months. The decisions in Metcalf v. Barker and Pickens v. Roy stand as barriers to the Piedmont Company's move in the district court to oust the jurisdiction of the state courts and thereby draw to itself property over which the state courts had previously acquired exclusive jurisdiction. Moreover, this is not a case where the Husteads, having been parties to the bankruptcy proceeding, have gone into state courts after confirmation of the sale to the Piedmont Company and there have done something to disturb the order of the bankruptcy court or to nullify the sale. The Husteads stand on their right to stay out of the bankruptcy court and on their claimed right of subrogation which, if valid, is the same right which the plaintiffs in the state actions themselves had, under the cited decisions of the Supreme Court, to prosecute the same to execution and sale without hindrance by injunction from federal courts.

[4] Even if there be infirmity in this reasoning, the Piedmont Company has failed to show a right to the injunctive remedy it seeks in view of the decision of the Supreme Court in Sargent v. Helton,

115 U. S. 348, 6 Sup. Ct. 78, 29 L. Ed. 412. In this case the court held, that where a sale of lands of a bankrupt estate has been made and confirmed by order of a bankruptcy court, and the lands have been conveyed by the assignee, the Circuit Court of the United States (and therefore the District Court) is without jurisdiction at the suit of the purchaser to enjoin a sale of the same lands about to be made upon the order of a state court. The Piedmont Company, by reference to the record and the briefs in the Sargent Case, urge that the lack of jurisdiction of the Circuit Court to enjoin such a sale might have been decided on the ground that the Circuit Court in which the bill for an injunction was filed was not the court in which the bankruptcy proceedings had been conducted. But whatever the Supreme Court might have done, it did decide unmistakably that at the suit of a purchaser at a bankruptcy sale, the Circuit Court (now the District Court) has no such jurisdiction.

The question arose under section 720 of the Revised Statutes (Comp. St. § 1242), which provides:

"* * * That the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The Supreme Court in its opinion said:

"The Circuit Court of the United States was, therefore, deprived of power, by the section just quoted, to protect the rights of the plaintiff, unless the writ of injunction was authorized by the law relating to proceedings in bankruptcy. * * * In a timely suit brought by the assignee in bankruptcy, there is no doubt that, upon a proper showing, the Circuit Court might have enjoined proceedings in the attachment suits in the state court. This is the express ruling in Chapman v. Brewer, 114 U. S. 158. But the plaintiff in this case is not the assignee in bankruptcy. Sullivan, the transferee of Sargent, the vendee at the bankruptcy sale, was the real plaintiff and the only party who, at the final hearing, asked for the injunction. The question, therefore, is, does any law relating to proceedings in bankruptcy authorize an injunction at the instance of a purchaser of property at a bankruptcy sale, or his vendee, to stay proceedings in a state court?"

In answering this question, the court, referring to Chapman v. Brewer, 114 U. S. 158, 5 Sup. Ct. 799, 29 L. Ed. 83, said:

"The case makes it clear that the injunction to stay proceedings in a state court is only allowed by the statute for the purpose of aiding the assignee in bankruptcy to discharge his duty and of protecting the property of the bankrupt estate for the equitable distribution among the creditors. But there is no act of Congress from which can be inferred authority to a court of the United States to issue an injunction to restrain proceedings of a state court, at the instance of a purchaser at bankruptcy sale, or of his vendee."

Sargent v. Helton was followed by Mills v. Provident L. & T. Co., 100 Fed. 347, 40 C. C. A. 394; Texas Cotton Products Co. v. Starnes (C. C.) 128 Fed. 185; Hyattsville Bldg. Ass'n v. Bouic, 44 App. D. C. 411; Leathe v. Thomas, 97 Fed. 139, 38 C. C. A. 75; In re Sawyer, 124 U. S. 220, 8 Sup. Ct. 493, 31 L. Ed. 409; Louisville Trust Co. v. Cincinnati (C. C.) 73 Fed. 734; Chicago Ry. Co. v. St. Joseph Union Depot Co. (C. C.) 92 Fed. 26, distinguished in Stewart v. Wisconsin Central R. Co., 117 Fed. 784.

The petitioners in the suit at bar are not the trustees in bankruptcy. Being purchasers, their case is ruled by the law of Sargent v. Helton.

For the reasons we have given the decree below dismissing the petition must be affirmed.

BUFFINGTON, Circuit Judge (dissenting). Satisfied as I am of the jurisdiction of the bankrupt court to sell the bankrupt's realty divested of liens, finding it undertook to do so and accepted the buyer's money, and convinced it had the power and was bound to itself to secure the property to the purchaser free from liens, but has not done so, I respectfully record my dissent.