**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**SWIFT & COMPANY, Appellee.**

**No. 15364.**

United States Court of Appeals
Eighth Circuit.

May 4, 1956.

Norton J. Come, Atty. N. L. R. B., Washington, D. C. (Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Duane Beeson, Atty. N. L. R. B., Washington, D. C., on the brief), for appellant.

G. Carroll Stribling, St. Louis, Mo. (Harold A. Thomas, Jr., and Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., on the brief), for appellee.

Mozart G. Ratner, Chicago, Ill. (Jacobs, Kamin & Ratner, Chicago, Ill., on the brief), for Local 88, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL, as amicus curiae.

Before WOODROUGH and VAN OOSTERHOUT, Circuit Judges, and HULEN, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This appeal is from an order of the District Court, opinion reported at 130 F.Supp 214, denying the National Labor Relations Board, hereinafter called the Board, a preliminary injunction which would restrain Swift & Company from seeking to enforce or avail itself of the benefits of a temporary restraining order obtained by Swift in the State court of Missouri against Local 88, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL, hereinafter called the Union, to prevent certain picketing at the Swift plant in St. Louis, Missouri. The Union has appeared and filed briefs as amicus curiae.

We shall summarize the pertinent facts. Swift's city salesmen in the City of St. Louis were nonunion. The Union desired to represent the salesmen, and on September 10, 1953, placed a picket line at all the entrances to Swift's plant, with the exception of an entrance used by prospective employees and visitors to a test kitchen, and another entrance used by production and maintenance em-

ployees. This was part of a drive by the Union to organize all the meat salesmen in the St. Louis area. Prior to the picketing, no effort had been made by the Union's officers or representatives to personally contact and discuss unionization with Swift's salesmen. The picketing was peaceful. Not more than three pickets were at each entrance picketed. The pickets were stationed at the transportation entrances 24 hours a day, and carried placards containing the statement that the salesmen were nonunion. Some such entrances were at dead end streets and at places where no advertising purpose could be served. Truck driver employees of Swift and customers doing business with Swift refused to cross the picket line set up. The Union did not represent the salesmen. Practically all of Swift's employees are members of other unions. There was no labor dispute in existence between Swift and any of its employees or the unions representing such employees.

On September 11, 1953, Swift petitioned for and received from the State court an ex parte order restraining the Union from picketing at the plant. The petition for injunction alleged that the Union, without claiming representation rights, placed pickets at Swift's plant; that the purpose of this picketing was to force the salesmen employed by Swift to join the Union contrary to the express provisions of the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., and the law of the State of Missouri, and to force Swift to influence and coerce said salesmen to join said Union contrary to the Act and Missouri law; and that the picketing was initiated by the Union with the knowledge that it would result in the refusal of Swift's employees and employees of persons with whom Swift did business to cross the picket line. The petition further alleged that Swift had twelve million pounds of perishable products in process, subject to complete spoilage if Swift were not permitted to maintain normal operations. In obedience to

the restraining order the picketing terminated on September 11, 1953.

On January 22, 1954, Swift filed two separate charges against the Union with the Board's Regional Director. No. 14-CB-56 (Case No. 9793), the one primarily involved here and referred to hereinafter as the picketing charge, charges violation of section 8(b) (1) (A) and 8(b) (2) of the National Labor Relations Act, as amended [1], hereinafter called the Act. In No. 14-CC-56 (Case No. 9741) the charge was violation of section 8(b) (4) (A) and 8(b) (4) (B). This charge is hereinafter referred to as the boycotting charge. The Regional Director investigated both charges and filed a complaint on the boycotting charge and took appropriate action thereon. The Board held that the Union had violated section 8(b) (4) (A). Upon petition of the Regional Director on behalf of the Board, pursuant to section 10(l) of the Act, the District Court enjoined the secondary boycott activity by order entered in Case No. 9741 on July 30, 1954. The Regional Director dismissed the picketing charge, saying: "The charge alleges activities that do not fall within the scope of sections 8(b) (1) (A) and 8(b) (2). I am, therefore, declining to take further action and I am dismissing the charge in this matter." An appeal was taken to the General Counsel who affirmed the dismissal.

On May 19, 1954, the Board commenced the present action in the District Court seeking to nullify the State court restraining order against primary picketing. The theory of the suit was that the Act provided a comprehensive and exclusive system of regulation for the Union conduct which was the subject both of Swift's State court proceeding and its charges under the Act; that the Act proscribed some of the activities as unfair labor practices under section 8(b) (4), and those not so proscribed are either affirmatively protected under section 7 of the Act or conduct which the Act has designedly left free of Governmental

1. 29 U.S.C.A. § 141 et seq.

interference; that the State court was without jurisdiction to issue its restraining order, in that such order invades a field which the Act has preempted and closed to concurrent State regulation; and that the order limits the power of the Federal court in the 10(*l*) proceeding to write a decree appropriate to effectuate the policies of the Act. The trial court on March 25, 1955, denied the Board's petition for injunction.

On August 22, 1954, the State court, in overruling the Union's motion to dissolve the restraining order and to dismiss the State proceeding on jurisdictional grounds, stated:

> "It will take a hearing on the facts of the case, to develop whether some of the issues herein are of such nature as to remain within the orbit of state regulation, although perhaps we cannot adjudicate the issues herein as fully as had been possible prior to the Taft-Hartley Act."

No final adjudication is shown to have been entered in the State proceeding, and the restraining order of the State court is in effect.

The issues upon appeal are:

1. Is the injunction requested by the Board barred by 28 U.S.C.A. § 2283?

2. Does the State court have jurisdiction to issue the order restraining the primary picketing?

■ We must first consider the issue of the trial court's jurisdiction. This court has jurisdiction to consider appeals from interlocutory orders of the District Court granting or denying preliminary injunctions. 28 U.S.C.A. § 1292(1). However, it is also necessary for us to satisfy ourselves as to the jurisdiction of the District Court. In Schroeder v. Freeland, 8 Cir., 188 F.2d 517, 519, this court said:

> " * * * District Courts of the United States are not courts of general jurisdiction but of limited jurisdiction. This jurisdiction is to be

exercised only within the limitations defined by the Constitution and Congress and the question of lack of federal jurisdiction may be raised at any time, either in the trial or appellate court. As an appellate court we must satisfy ourselves that the trial court had jurisdiction of the controversy under review, [Cases cited.]"

Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part:

> " * * * whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. * * * "

In Kern v. Standard Oil Co., 8 Cir., 228 F.2d 699, at page 701, we said:

> " * * * If a federal district court tries a case with respect to which jurisdiction is lacking, the jurisdiction of the appellate court, on review, extends only to correcting the error of the trial court in entertaining the action. * * * A federal appellate court, in a case under review, must satisfy itself not only of its own jurisdiction, but also of that of the district court. * * "

■ In its petition the Board states that its jurisdiction is invoked by 28 U.S.C.A. §§ 1337 and 1651.[2] The Act is a law regulating commerce. Consequently, the District Court would have jurisdiction over the subject matter of this action under 28 U.S.C.A. § 1337. Capital Service, Inc., v. National Labor Relations Board, 347 U.S. 501, 504, 74 S.Ct. 699, 98 L.Ed. 887; Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 513, 75 S.Ct. 452, 454, 99 L.Ed. 600. There remains for us to consider whether jurisdiction is denied the Federal court to enjoin the State court proceeding by 28 U.S.C.A. § 2283 which provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as

2. See footnote 5 Amalgamated Clothing Workers of America v. Richman Brothers

Co., 348 U.S. 511, 519, 75 S.Ct. 452, 99 L.Ed. 600.

expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The history, purpose, and construction of section 2283 are fully considered by the Supreme Court in the Richman case, supra. The Court states that this enactment revised as well as codified its predecessor, former section 265 of the Judicial Code, and that by the enactment of section 2283 Congress "made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation."

Hence, decisions under the predecessor statute which appear to recognize implied exceptions to the statutory prohibition need not be considered. The Court states, 348 U.S. at pages 515–516, 75 S. Ct. at page 455:

"In the face of this carefully considered enactment, we cannot accept the argument of petitioner and the Board, as *amicus curiae*, that § 2283 does not apply whenever the moving party in the District Court alleges that the state court is 'wholly without jurisdiction over the subject matter, having invaded a field preempted by Congress.' No such exception had been established by judicial decision under former § 265. In any event, Congress has left no justification for its recognition now. This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions.

"We are further admonished against taking the liberty of interpolation when Congress clearly left no room for it, by the inadmissibility of the assumption that ascertainment of pre-emption under the Taft-Hartley Act is self-determining or even easy. As we have noted in the Weber case, 'the areas that have been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds.' 348 U.S. at page 480, 75 S.Ct. at page 487. What is within exclusive federal authority may first have to be determined by this Court to be so."

The Court, 348 U.S. at page 518, 75 S.Ct. at page 457 also fully answers the contention made in our present case, that if a State action is not halted the Federal labor relations plan will be disrupted, by stating that the State courts have for many years adequately protected Federal rights, and that, "The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts."

It is true that in the Richman case the action was instituted by the Union, not by the Board. However, we believe that all that was said there relative to section 2283 is applicable to our present case unless the Board can bring itself within the expressly authorized exception.

Is the injunction here sought expressly authorized by the Act? If so, such authorization must be found in section 10(j) of the Act which reads:

"The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States * * * for appropriate temporary relief or restraining order. * * *"

It will be noted that the foregoing Act authorizes the Board to seek an injunction only under certain prescribed conditions. The Act does not go to the extent of specifically authorizing injunctions against State court proceedings, and we find nothing in the cases to indicate whether the authorization in the statute we are considering is broad enough to constitute a specific authorization within the meaning of section 2283.

In section 10(*l*) of the Act, relating to boycotts, the authorization for injunction is followed by the words "notwithstanding any other provision of law." Such words are not included in 10(j). The Capital Service case [347 U.S. 501, 74 S.Ct. 702] does not answer this question as the Court there found the injunction was authorized by the "necessary in aid of its jurisdiction" provision. We shall assume without so deciding that the authorization of 10(j) extends to enjoining State court proceedings. In any event, it is necessary for the Board to meet the terms and conditions of section 10(j) before it is authorized to seek relief thereunder. The relief is available only after issuance of a complaint as provided by section 10(b). A charge filed with the Board is a prerequisite to the issuance of a complaint. The Board can not issue a complaint upon its own initiative. Consumers Power Co. v. National Labor Relations Board, 6 Cir., 113 F.2d 38, 42; National Labor Relations Board v. Waterfront Employers of Washington, 9 Cir., 211 F.2d 946, 955. The only charges filed with the Board were the separate boycotting and picketing charges filed by Swift. As heretofore noted, the Regional Director and the General Counsel upon appeal both dismissed the charges based upon primary picketing. The General Counsel's dismissal is final and not subject to appeal. 29 U.S.C.A. § 153(d); Hourihan v. National Labor Relations Board, 91 U.S. App.D.C. 316, 201 F.2d 187; Lincourt v. National Labor Relations Board, 1 Cir., 170 F.2d 306.

 No complaint was issued upon the primary picketing charge. The Board does not so contend. The Board in its petition filed in this case does not assert jurisdiction based on section 10(j) of the Act, and this is doubtless because of its realization that it had not met the requirements of such section. Obviously, in the absence of a complaint the Board was not authorized to invoke jurisdiction or claim any rights based on section 10(j). Since the dismissal of Swift's charges, nothing has been pending before the Board pertaining to the primary picketing. In the Richman case the Supreme Court in speaking of the right to injunctive relief states, 348 U.S. at page 520, 75 S.Ct. at page 457:

> "* * * Such aid only the Board could seek, and only if, in a case pending before it, it has satisfied itself as to the adequacy of the complaint."

The Board has not brought itself within the expressly-authorized exception of section 2283.

The Board and the Union urge that a stay of the State court proceeding is necessary in aid of the court's jurisdiction, in that the continued existence of the State injunction limits the District Court's unfettered power to write such a decree as it deems necessary to effectuate the purpose of the Act, in connection with the section 10(*l*) injunction involved in separate Case No. 9741. They rely upon Capital Service, supra.

It is undisputed that a proper complaint had been filed and approved in the boycott proceeding under section 10(*l*), and that an injunction was properly applied for and granted in that case. Capital Service holds that the District Court has unfettered power to issue a proper decree in the section 10(*l*) proceeding, and has a right in aid of its jurisdiction to set aside any State proceeding which interfered with its exercise of such power. Capital Service and the present case are alike to the extent that in each proper basis for relief under section 10(*l*) was established. In other respects the cases are clearly distinguishable.

In Capital Service, the State court had enjoined, among other things, the very boycott activities the Board was seeking to reach in the Federal court case. In our present case, the State injunction did not cover the boycott activities. In Capital Service, the primary activities and boycott activities occurred at the same time and place. Here, the primary picketing occurred at Swift's plant, and the boycott activities occurred at the busi-

ness establishments of Swift's customers at a time subsequent to the issuance of the State injunction against picketing activities. The trial court's findings on this issue are:

"In the instant case the 'primary' picketing at Swift's plant enjoined by the State court and the subject of Swift's 8(b) (2) charge is not the same conduct this Court was asked to enjoin in the 10(*l*) proceeding. The latter conduct was secondary boycotting at the retail store customers of Swift. Though the two activities may have been motivated by the same purposes, they are sufficiently separate that this Court did not feel any necessity to remove the State court injunction against picketing in drafting its decree against the secondary boycotting. The contention of the *amicus curiae* that the State Court's temporary restraining order restrained the secondary boycotting is not warranted, especially because the Union itself did not consider it to do so—the evidence tending to show the secondary boycott placing the time thereof *after* the entry of the State court restraining order.

"Thus this case is not like Capital Service where enjoining the State Court was 'necessary in aid of its jurisdiction' in the 10(*l*) proceeding."

We agree with and adopt the foregoing finding and conclusion of the trial court.

No one contends that the third exception contained in section 2283 "to protect or effectuate its judgments" is applicable.

The Board, citing United States v. United Mine Workers of America, 330 U.S. 258, 272, 67 S.Ct. 677, 91 L.Ed. 884, asserts that statutes which in general terms divest previously-existing rights will not be applied to the sovereign without express words to that effect, and then contends that as an agency of the United States it must be considered in the same light as the United States for the purpose of the construction of the applicability of section 2283. The authorities cited by the Board do not support its contention that it has acquired all the privileges and immunities of the United States. For example, we think Nathanson v. National Labor Relations Board, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23, cited by the Board, negatives the Board's contention. It was there held that a debt owed the Board was not entitled to preference as a debt owed the United States. The intention of Congress to bestow the privileges and immunities of the Government upon agencies created by the Government must be clearly demonstrated. Reconstruction Finance Corporation v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

While the precise question we are now considering was apparently not specifically raised in the Capital Service case, the Court in that case treated section 2283 as being applicable, and proceeded to determine whether the action fell within the exceptions enumerated in the statute limiting jurisdiction.

The Board has not demonstrated that it was the intention of Congress to exempt actions brought by it from the limitations imposed by section 2283.

The Board has not brought itself within any of the exceptions to section 2283. Thus, we conclude that section 2283 deprives the District Court of any jurisdiction or power to grant the injunction against the State court proceeding prayed for in this action. The trial court decided this case upon the basis that the State court had jurisdiction, stating:

"Thus I conclude that the State Court has jurisdiction in this case to enjoin the picketing alleged if found to be in violation of State Law. This Court does not sit as a Court of Review over the State Courts. The federal question may be raised and defended by the Union through the State Appellate Courts and, if desired, to the U. S. Supreme Court. This is the route travelled

by Garner [346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228], Kinard [346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. 423] and Laburnum [347 U.S. 656, 74 S. Ct. 833, 98 L.Ed. 1025] supra.

\* \* \* \* \*

"In view of the conclusions reached on the State Court jurisdiction, it is unnecessary to consider the Board's further contention that this case falls within the exemption from Section 2283 'as expressly authorized by Act of Congress.'"

Because of our finding that the District Court was without jurisdiction to enjoin the State proceeding, we do not reach the question of whether the State court had power or jurisdiction to issue the order restraining the primary picketing.

The order denying the Board's petition for temporary injunction is affirmed, but said order is modified to show that dismissal is based entirely on lack of jurisdiction on the part of the District Court to consider the petition to enjoin the State proceedings.