**JACKSONVILLE BLOW PIPE COMPANY, Appellant,**

v.

**RECONSTRUCTION FINANCE CORPORATION, Appellee.**

No. 16400.

United States Court of Appeals
Fifth Circuit.

April 26, 1957.

W. J. Oven, Jr., Tallahassee, Fla., for appellant.

Gray C. Ramsaur, Guy W. Botts, Jacksonville, Fla., Botts, Mahoney & Whitehead, Jacksonville, Fla., of counsel, for appellee.

Before TUTTLE and BROWN, Circuit Judges, and SIMPSON, District Judge.

TUTTLE, Circuit Judge.

This is an appeal from a summary judgment enjoining appellant from prosecuting a suit in the state courts of Florida against appellee's transferees of certain property purchased by the appellee at a bankruptcy sale in and approved by the district court, and forbidding appellant from initiating any other suits for the recovery of the property or for damages for its taking. The principal issue is whether such an injunction is prohibited under the circumstances of this case by section 2283 of the Judicial Code, 28 U.S.C.A. § 2283.

On October 31, 1951, appellant entered into a "retain title contract" with the Parker Manufacturing Company, whereby appellant furnished and installed a blow pipe system for that company for a purchase price of $3,724.32, retaining title, however, until the system was "fully paid for in cash." On January 17, 1953, the Parker Manufacturing Company was adjudged a bankrupt and all of its assets were placed in the hands of a trustee; at that time $550.00 was still owing on the above contract and appellant filed a secured claim. The Referee on May 20th directed the trustee to conduct a public sale of the Parker plant and the trustee thereupon advertised the entire plant for sale as a unit, listing the blow pipe system as part of its equipment. On June 5th appellant petitioned the Referee that it be declared the owner of the system and that the trustee be directed either to give them possession of it or to pay them the amount of their claim; thereupon on June 16th the Referee ordered as follows:

"Ordered, Adjudged and Decreed, that the Trustee surrender to the petitioner the described property subject to the retention of title agreement, or that the trustee pay to the petitioner the principal sum of $550.00 plus interest accruing to the date of the filing of the involuntary bankruptcy petition."[1]

On the same day the Referee modified his order of sale of May 20th to provide that the property sold should be free of liens and unencumbered. On the following day the trustee sold the entire plant, as advertised, to the appellee for $49,-100, on the condition that appellee be permitted to offset against the price so much as necessary of the approximately $70,000 mortgage indebtedness owed to it by the bankrupt; the district court approved the sale on these terms on September 30th. On November 5th the trustee conveyed the plant to the appellee by a Deed and Bill of Sale which expressly covered the blow pipe system.

On December 2nd the trustee, evidently not having realized any cash with which he could pay the $550 plus interest to the appellant, wrote a letter to its attorney:

"* * * I * * * am, by this letter, advising you that we forthwith surrender the property in question subject to the retention title agreement in favor of your client, Jacksonville Blow Pipe Company, the same being located on the premises of Parker Manufacturing Company, Inc.

"You may proceed on the basis that I as Trustee, in accordance with the Referee's order entered on the 16th day of June, 1953, have relinquished all rights and claims *that I may have* in my capacity as Trustee to the pipes in question. This should be sufficient for you to proceed in

---

1. On June 20th the trustee entered an appeal from this order, which, however, was never perfected.

any manner you deem fit." (Emphasis added.)[2]

On January 5, 1954, appellant sent a truck to the plant to remove the system, but after some negotiations with representatives of the appellee, appellant was persuaded to leave the system there, marked prominently with a sign:

"Property of and for sale by Jacksonville Blow Pipe Company, P.O.Box 3687, Phone 5-0586, Jacksonville, Florida."

On March 15th appellee sold the entire plant, with warranty of title, to H. Pickett, who thereafter conveyed parts to the Cash Lumber Company and to others. On September 25th appellee offered to pay appellant the amount of its claim and on April 7, 1955, appellee's check for $564.92 was tendered to appellant by the trustee. On June 26th the Referee entered an order approving the accounts and discharging the trustee; no appeal was taken from this order.

Appellant then filed a suit against H. Pickett and the Cash Lumber Company in the Circuit Court of the Second Judicial Circuit of Florida, demanding a return of the blow pipe system or its value plus $4,500 damages for its retention. Appellee thereupon filed this suit in the district court, in which the bankruptcy proceedings had transpired, praying for a declaratory judgment determining appellee's and appellant's rights to the system and for a permanent injunction prohibiting appellant from prosecuting any suits for the repossession, or damages for the retention of the system. After both parties had submitted affidavits, admissions, and answers to interrogatories and had moved for summary judgment the district court granted the injunction prayed for on the condition that appellee would deposit $550 plus the requisite interest with the court.[3]

The principal issue is created by appellant's contention that because of the provisions of 28 U.S.C.A. § 2283 the district court was without jurisdiction to enter such an injunction. Reliance is placed principally on Sargent v. Helton, 115 U.S. 348, 6 S.Ct. 78, 29 L.Ed. 412, followed in Piedmont Coal Co. v. Hustead, 3 Cir., 294 F. 247, 32 A.L.R. 556, certiorari denied, 264 U.S. 582, 44 S.Ct. 331, 68 L.Ed. 860, and on Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, and Amalgamated Clothing Workers v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600. It is thus necessary for us to examine this somewhat troubled jurisdictional area in which the effect of several crucial and divided Supreme Court decisions and of the 1948 revision of the Judicial Code have as of yet been insufficiently explored.

Though the federal courts have ever since 1793 been forbidden by the various Judiciary Acts and Codes to enjoin the proceedings of any state court,[4] over the years a number of judicial exceptions to the rigid application of the prohibition had developed. In Julian v. Central Trust Company, 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629, the Supreme Court held that in spite of R.S. § 720 a federal court that had approved a foreclosure sale of mortgaged property free of all except specified liens could, at the instance of the purchaser, protect its own continuing jurisdiction over the property by enjoining the prosecution of an ac-

---

2. Some days earlier, on November 9th, appellee in filing another petition in the bankruptcy proceeding, had, in a brief, characterized the blow pipe system as having been abandoned by the Trustee; the petition, however, was not concerned with the ownership of the property.

3. 143 F.Supp. 601.

4. The original provision read:
 " * * * nor shall a writ of injunction be granted to stay proceedings in any court of a state * * *." 1 Stat. 335.
 This was later revised to read:
 "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." R.S. § 720, recordified as § 265 of the Judicial Code of 1911, 28 U.S.C. § 379 (1940 ed.), 36 Stat. 1162.

tion in the state courts which sought to enforce a lien against the property created by a judgment in the state court against the former owner based on an accident that had occurred after the foreclosure sale. In Riverdale Cotton Mills v. Alabama & Georgia Manufacturing Co., 198 U.S. 188, 25 S.Ct. 629, 49 L.Ed. 1008, the Court held that a federal court that had after much litigation settled the title to certain property in a foreclosure action could enjoin a state suit in which the defeated parties sought to attack the title approved by the federal court on the ground that that court never had had proper diversity jurisdiction; Julian and many other cases were cited for the proposition that an equity court had power to protect its jurisdiction and to effectuate its decrees by issuing such an injunction. Cf. also Lang v. Choctaw, Oklahoma & Gulf R. R., 8 Cir., 160 F. 355, and Bethke v. Grayburg Oil Co., 5 Cir., 89 F.2d 536, certiorari denied, 302 U.S. 730, 58 S.Ct. 54, 82 L.Ed. 564, in which this Court held that even after the termination of a receivership a federal court had jurisdiction to issue an injunction in an ancillary action against an *in personam* suit in a state court which sought to enforce a debt that had been settled and the lien for which had been discharged in the earlier proceeding.

Soon after followed Toucey v. New York Life Insurance Co., supra. In an elaborate and lengthy opinion Mr. Justice Frankfurter analyzed the history of the statutory prohibition, with special reference to its purpose of reducing the occasions for friction between the federal and the state courts, and pointed out that it appeared that two types of exceptions had grown up to reduce the scope of the statute: (1) certain exceptions based on particular statutes that explicitly or implicitly overrode the general prohibition; (2) certain court created exceptions, including especially the following: (a) in *in rem* proceedings in which both a federal and a state court seek to adjudicate rights to the same property and in which the federal court first obtains custody of the property its injunction against other proceedings will reduce rather than create friction; while several cases were cited directly in support of this proposition, which the opinion did not criticize, the Julian and Riverdale cases were mentioned in a separate footnote, 314 U.S. at page 135, fn. 6, 62 S.Ct. at page 145 to show "the extent to which a federal court's exclusive control over the *res* may require the use of the injunction to effectuate its decrees *in rem* * * *"; (b) injunctions against the enforcement of fraudulently obtained state court judgments— of these the opinion is somewhat more critical; (c) injunctions against the relitigation in a state court of an *in personam* cause previously determined in the federal court; for this exception the Court found insufficient support in the cases and no authority in the statute, and its *holding* was that no such injunction may issue. A vigorous dissent by Mr. Justice Reed challenged the majority's conclusion that injunctions against relitigation would be more productive of federal-state court friction than would be the undisturbed conduct of such proceedings, and also reanalyzed with different results the cases commonly cited in support of such injunctions and either distinguished or disregarded in the opinion; in particular the dissent, while not at all disputing the majority's stated approval of the *in rem* exception, pointed out that some of the cases cited in the opinion in support of that exception or as defining its bounds, in particular the Julian and Riverdale cases, were actually "relitigation" cases because by the time the ancillary injunction proceeding was brought the *res* had long since passed from the hands of the federal court.[5]

The Second Circuit soon thereafter found nothing in the Toucey case to prevent it from approving an injunction to protect a purchaser in a receivership proceeding from a state suit based on a

5. In the Julian case, however, the court had relinquished possession but not jurisdiction; see 7 Moore, Federal Practice ¶66.08 [3] at 1954 fn. 5.

lien which the federal action had extinguished. American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., 136 F.2d 681. It cited the opinion's approval of the *in rem* exception, and then cited the Julian, Riverdale, and Bethke cases for the proposition that:

> "To render effectual its prior decrees and to protect the title of one who purchased under them, it [a federal court] may notwithstanding § 265 restrain state court litigation which would have the effect of defeating or impairing its jurisdiction." 136 F.2d at page 682.

The Supreme Court denied certiorari, sub nom Salomon v. City of New York, 320 U.S. 756, 64 S.Ct. 64, 88 L.Ed. 450, and 320 U.S. 794, 64 S.Ct. 263, 88 L.Ed. 479.

■ In 1948 the present form of the restrictive provision was adopted. 28 U.S.C.A. § 2283 reads as follows:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The pertinent portion of the Reviser's Note states:

> "The exceptions specifically include the words 'to protect or effectuate its judgments,' for lack of which the Supreme Court held that the Federal courts are without power to enjoin relitigation of cases and controversies fully adjudicated by such courts. (See Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100. A vigorous dissenting opinion (62 S. Ct. 148) notes that at the time of the 1911 revision of the Judicial Code, the power of the courts of the United States to protect their judgments was unquestioned and that the revisers of that code noted no change and Congress intended no change).

> "Therefore the revised section restores the basic law as generally understood and interpreted prior to the Toucey decision."

Relying on the revised wording as explained in the "Note," the Tenth Circuit in Jackson v. Carter Oil Co., 179 F.2d 524, certiorari denied 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597, held that a federal court could enjoin the prosecution of a state suit that would challenge an adjudication of title that had been made among the parties or their privies in an earlier action. See also Berman v. Denver Tramway Corp., 10 Cir., 197 F.2d 946.

Since 1948 the Supreme Court has decided no case here directly relevant and has only once taken the opportunity to comment broadly on the present provision. In Amalgamated Clothing Workers v. Richman Brothers Co., supra, where a union, arguing that the field of interstate labor relations had been preempted by Congress, sued in federal court to enjoin an employer from seeking an injunction in a state court against peaceful picketing on the ground that such picketing still violated the state laws against conspiracy and restraint of trade, the Court held that neither the first nor the second explicit exception incorporated in § 2283 would allow such a restraint of a state proceeding, for no federal labor statute expressly authorized injunction against a state court in such a situation and the federal court could not "aid its jurisdiction" since it had as yet acquired none over the dispute and would not acquire any unless the N. L. R. B. brought an appropriate action; the here critical final phrase of § 2283 was not there at issue since there had been no previous federal judgment to protect. However, the majority, in an opinion also written by Mr. Justice Frankfurter—and concurred in by Mr. Justice Reed, did say:

> "We need not re-examine the series of decisions, prior to the enactment of Title 28 of the United States Code in 1948, which appeared to recognize implied exceptions to

the historic prohibition against federal interference with state judicial proceedings. See Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100. By that enactment, Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation. * * * The 1948 enactment revised as well as codified. The old section was thus embodied in the new § 2283: * * *." 348 U.S. at page 514, 75 S.Ct. at page 454.

"This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." 348 U.S. at pages 515–516, 75 S.Ct. at page 455.

and in a footnote, commenting on the final paragraph of the Reviser's Note quoted above:

"Even if taken to mean that, despite the revised wording, the section is to derive its content from decisions prior to 1948, these contain no precedent for the present proceeding. * * * Moreover, in context it is clear that the quoted phrase refers only to the particular problem which was before the Court in the Toucey case." 348 U.S. at page 515 fn. 1, 75 S.Ct. at page 455.[6]

On the basis of these comments in the Richman Bros. opinion appellant argues that the only exceptions in § 2283 are the three categories specifically set forth therein and that it is thus no longer permissible to import any of the three court made exceptions that had been identified in the Toucey case, except insofar as the "relitigation" exception is now covered in the final phrase of the statute; therefore the *"in rem"* exception approved by both the opinion and the dissent in the Toucey case would be eliminated. Cf. National Labor Relations Board v. Swift & Company, 8 Cir., 233 F.2d 226; Collins v. Laclede Gas Company, 8 Cir., 237 F.2d 633.

We are unable to agree with the appellant's understanding of § 2283 based on the above decision. In view of the general approval of the *in rem* exception in the Toucey case, supported thereby persuasive arguments and by many decisions, and in the absence of any indication that Congress wished to modify it, and in view of the Reviser's Note that: " * * * the revised section restores the basic law as generally understood and interpreted prior to the Toucey decision" we cannot see how it can be argued that the exception is now no longer viable; applied to the *"in rem"* exception the broad statements in the Richman Bros. case would at most be dicta.

Given the approval in the Toucey case, albeit with misgivings, of the Julian and Riverdale cases as within the *in rem* exception, and concluding that that exception is still applicable under the new statute, we feel that the present case is sufficiently within its bounds. On the other hand if the Toucey dissent's view of the earlier cases is taken, i. e. that they are in effect illustrative of the "relitigation" exception since the *res* in each case had already passed from the custody of the court, then the statutory reversal of the Toucey holding as to this exception in the *in personam* situation, which is here necessarily *a fortiori* of the relitigation of an *in rem* proceeding, preserves both the authority of the Julian and Riverdale cases and their controlling effect here. If in addition it is taken into account that the appellant as well as the appellee was a party to the original proceeding, and that the defendants in the state action are privies in title of the appellee and thus entitled to claim the benefits of any judgment that

6. In one of two dissents, concurred in by three Justices, Mr. Chief Justice Warren argues that § 2283 is meant to be not broader but narrower than the provision it replaced, and that besides reversing the specific holding of the Toucey case it was also intended to reject "its philosophy of judicial inflexibility" and to approve the dissent in that case.

secures his title (30 Am.Jur., Judgments, §§ 222–27), we see that this is even more plainly a "relitigation" situation now excepted from the prohibition by the legislative reversal of the Toucey case, than even Julian, in which the enjoined parties had not been participants in the previous litigation. Finally, viewing only the statute in the abstract, the district court's action here appears to be clearly covered by the authority "to protect or effectuate its judgments" since all that is sought in the state litigation is to change the manifest effect of the actions and orders of the court appointed trustee, of the Referee, and of the court itself in approving the Bill of Sale including the blow pipe system; nothing would be as productive of friction between the state and the federal courts as to permit a state court to interpret and perhaps to upset such a judgment of a federal court.[7]

Appellant also relies on the old case of Sargent v. Helton, supra, in which it was held that in view of R.S. § 720 a purchaser at a bankruptcy sale could not be protected by enjoining a state court proceeding against the purchased property, which proceeding had been commenced by attaching the property before the bankruptcy was initiated but which was only completed after the federal court had sold the property, where no motion was made to stay the state action during the bankruptcy proceeding. Appellant cites only one relevant case which followed Sargent, Piedmont Coal Co. v. Hustead, supra, in which any purported reliance on the earlier case was dicta since it was held that there the purchaser did not take free of liens created by an earlier state court proceeding. In view of the later Julian, Riverdale, Bethke, and American Brake Shoe cases, none of which refer to Sargent v. Helton, and in view of the distinction also applicable here pointed out in Stewart v.

Wisconsin Central Ry., C.C.N.D.Ill., 117 F. 782, that in the Sargent case the state proceeding had been commenced and the attachment made before the federal action had even been initiated, we feel that we are not bound by that decision.

On the substantive merits appellant's claim is easily disposed of. Principally it is based on the following points: (1) that the trustee was bound by the Referee's order either to return the property or to pay the claim, and by making arrangements for a sale that would yield no money he had indicated his election to return the property; (2) that the trustee had explicitly abandoned the property to the appellant by his letter of December 2, 1953; (3) that appellee had waived its claim to the system by the statements in a certain brief they had filed in the proceeding, by permitting the posting of a sign on the property indicating appellant's ownership, and by offering to pay the claim even though ostensibly they had purchased the property free of all liens. None of these contentions has any merit. By his advertisement, his acceptance of appellee's offer to purchase the entire plant, and by the court approved Bill of Sale the trustee had indicated clearly that he had elected not to return the system to appellant; if he failed to make any provision to pay appellant as required by the Referee's order an action could have been initiated against the trustee or his bond—but appellant did not even appeal from the order settling the trustee's accounts and discharging him. The letter of December 2nd was ineffective to pass title to the system for the appellee had already received its Bill of Sale, and thus trustee's act in relinquishing "all rights and claims that I may have in my capacity as Trustee" was entirely nugatory. None of appellee's acts, all of which were considered by the district court, amounted to a conveyance of its

---

7. It should be noted that the first explicit exception: "as expressly authorized by Act of Congress" is not available here for the only relevant statutes here are those under the Bankruptcy Title, and of those none allow an injunction to protect a purchaser in a bankruptcy sale; see 11 U.S.C.A. §§ 11, sub. a (15), 29 sub. a.

undoubted property right in the system. Finally it should be noted that there is no equity in appellant's position, for not being satisfied with receiving the entire amount of its claim with interest from a no-asset bankruptcy proceeding it now wishes to assert the forfeiture to it of property worth many times the amount of its claim and damages in excess of the original value of their contract.

The judgment of the district court is affirmed.

SIMPSON, District Judge (dissenting).

With all deference, I dissent with respect to the jurisdictional question involved in this case, that is, the interpretation placed by the majority upon 28 U.S.C.A. Sec. 2283. As I read the decision, it is authority for federal courts to assume jurisdiction of all litigation affecting any property that has ever been sold in a bankruptcy proceeding, long after the close of such proceedings. The welcome mat is thus spread, requiring the district courts to entertain much vexatious litigation that should go elsewhere.

The mere confirmation of a trustee's sale of assets (a *caveat emptor* sale) is in no sense a judicial determination respecting the title conveyed, or the property covered.[1] Here by state court replevin action against a subsequent purchaser claiming under the bankruptcy sale purchaser, the right of the trustee to sell certain property was questioned, and the title to the property was sought to be litigated for the first time. In the absence of clear legislative authority to interfere by injunctive decree with such state court proceedings, this court should not approve such interference. No reason exists for bankruptcy proceedings to be so sacrosanct. I am not convinced that the Congress, by its enactment of the last clause of Sec. 2283, has granted the power to hold them so. I would reverse, with directions to dismiss the complaint.

---

[1.] The statement in the majority opinion: "On November 5th the trustee conveyed the plant to the appellee by a Deed and Bill of Sale which expressly covered the blow pipe system" lacks accuracy. The language of the Bill of Sale was " * * personal property located thereon, including but not limited to the following: * * *: blower system consisting of 55-inch blower fan with a 10-horsepower electric motor; * * * ". The description in the retention title contract of the property claimed by the appellant is entirely dissimilar. The property may or may not be the same. This is, of course, a question of fact, going to the merits, which I shall not pursue. It is, however, illustrative of the factual questions the appellant has never had an opportunity to raise and litigate, and is now permanently enjoined from litigating.