**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COMBINED CENTURY THEATRES, INC., and International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators of the United States and Canada, AFL–CIO, Local No. 640, et al., Respondents.**

No. 252, Docket 25932.

United States Court of Appeals Second Circuit.

Argued March 31, 1959.

Decided May 2, 1960.

Stuart Rothman, General Counsel, Dominick Manoli, Associate General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Duane B. Beeson, Marion L. Griffin, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Cooper, Ostrin & De Varco, New York City, Herman E. Cooper, H. Howard Ostrin, Zevie B. Schizer, New York City, of counsel, for respondent, International Alliance of Theatrical Stage Employees, etc.

Zalkin & Cohen, New York City, Barney B. Fensterstock, Charles Feit, New York City, for respondent Combined Century Theatres, Inc.

Before LUMBARD, Chief Judge, BARNES,* Circuit Judge, and SMITH, District Judge.

BARNES, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board. It is before us pursuant to Title 29 U.S.C.A. § 160(e).

Originally, the respondent Combined Century Theatres, Inc. (herein called Century), took the position that it was a purely intrastate chain of neighborhood motion picture theatres not engaged in interstate commerce sufficiently to bring it under the coverage of the National Labor Relations Act. Hence it was subject to the New York State Act. Under the New York State Labor Relations Act "closed shop" union security provisions in collective bargaining agreements were not prohibited.

When the National Labor Relations Board asserted jurisdiction over the activities of the respondents (Combined Century Theatres, Inc., 1958, 120 NLRB 1379) a stipulation was entered into between the parties consenting to a remedial order eliminating the preferential hiring clause from the contract existing between respondents, and an order carrying that stipulation into effect was issued on March 11, 1959. That issue is no longer in dispute between the parties, and is not an issue herein. However, the existence of such an intent to maintain a "closed shop" contract so long as it was lawful to do so is a circumstance which existed at the time the employee's discharge (herein attacked and found illegal by the NLRB) took place. It adds background to what thereafter took place.

The sole issue presented at this time is whether the provisions in the supplemental decision and order of the Board, dated June 25, 1959, providing for the reinstatement of and awarding wages to, one Steinberger, should be enforced.

Alfred Steinberger was employed by respondent Century as a motion picture projectionist. This employment was intermittent from 1947 to 1951, and full time thereafter. For some two years he was assigned to the Baldwin Theatre;

* Of the Ninth Circuit, sitting by designation.

thereafter, and until May 1955 to the Alan Theatre. Steinberger was not a member of the respondent Union, but was referred to jobs by the Union's business agent under a "work permit" system which enabled non-members to obtain such work on payment of three per cent of their earnings to the Union. Steinberger had attempted to join the Union, but his application had been rejected.

In May 1955 one Berman, a Union member, returned from military service, and the Union's business agent Nagengast told Steinberger that Berman would replace him on the Alan Theatre job. Berman had worked with Steinberger at the Alan Theatre before the former's induction into the armed forces, and at that time had been replaced by one Elliott, who was on the job with Steinberger at the time of Berman's return. Steinberger asked Nagengast why Elliott would not be replaced by Berman, since Elliott had been originally assigned to handle Berman's job. Nagengast answered that Elliott was a member of respondent Union and had preference over Steinberger who was a non-member.

Steinberger was due to start on his two week paid vacation on Monday, May 30, 1955. However, he asked the Union agent for work, and the Union agent found temporary work for Steinberger on May 31, 1955, at the Bellerose Theatre, where Steinberger worked until Saturday, June 11, 1955.

On Friday, June 10, 1955, Steinberger asked the Union agent if he could not return to the Alan Theatre, and, in fact, reported at the Alan Theatre for work, but was denied access to the projection room by the theatre management, which deferred to the Union.

After Steinberger sought legal advice and his attorney had conferred with Union representatives, Steinberger was given employment commencing June 20,

1955, at the Baldwin Theatre, which continued until October 1955. The conditions of employment were similar as to pay, company benefits and working conditions at the Alan and Baldwin Theatres.

On October 28, 1955, Steinberger was dismissed for repeated violations of company regulations and rules relating to safety. The Regional Director refused to issue a complaint on Steinberger's charge that this October discharge was discriminatory, and this refusal was sustained by the Board's General Counsel.

The Board, however, did issue a complaint on the charge Steinberger's removal from the Alan Theatre job was a discriminatory discharge and in its supplementary order of June 22, 1959, directed respondents to cease and desist from the unfair labor practices found, and affirmatively, to offer reinstatement with back pay to Steinberger, and to post appropriate notices.

■ The single restricted issue is therefore whether there exists in the record substantial evidence that this was a discriminatory discharge. The Board so found, as do we.

Steinberger had testified that the Union's representative told him that Elliott was a "card man" and Steinberger a permit holder, and that "preference would be given the card man."

Respondents attack this statement as "unsupported and uncorroborated": (a) because Steinberger's attorney, allegedly present, was not called as a witness to confirm it; (b) because the Union representative denied it took place; and (c) because evidence the Board produced that Steinberger had greater *job seniority* (as opposed to *Union seniority*) than Elliott, was "inconclusive payroll data." [1]

■ The statement of a party, not inherently improbable or impossible, is entitled to the weight the trier of facts

1. Such data did show Elliott worked a part of one week in March 1950 at the Floral Theatre, and worked five weeks in September and October 1950 at the Argo Theatre; and no more. It has previously been stipulated that Steinberger had been employed, "as a regular employee" from February 11, 1951 to October 1955, a period of four years, nine months.

believes he should attach to it. Wener v. Commissioner, 9 Cir., 1957, 242 F.2d 938, 944–945; Sauget v. Villagomez, 9 Cir., 1955, 228 F.2d 374; National Equipment Rental, Ltd. v. Stanley, D.C.E.D. N.Y.1959, 177 F.Supp. 583. It needs no support or corroboration to achieve validity. Brown v. Minngas Co., D.C.Minn. 1943, 51 F.Supp. 363; In re Schaff's Estate, 1948, 274 App.Div. 1020, 85 N.Y. S.2d 147. The mere fact one party to a conversation denies the fact or import of a conversation does not invalidate or destroy the testimony of one who relates it. N.L.R.B. v. Syracuse Color Press, 2 Cir., 1954, 209 F.2d 596, 598–599; Starr v. Superheater Co., 7 Cir., 1939, 102 F.2d 170, 173. The fact that a third person allegedly present was not called to testify by either side is of no controlling or conclusive significance as to the validity of either such party's testimony, particularly when the name and business of the witness was known to the several litigants and process was available to both equally. All such matters are validly brought to the attention of the trier of fact below, and properly urged, but are of no great significant value to this Court, once the trier of fact below has come to its decision.

There being substantial evidence of the discriminatory discharge in the record, because such discharge was based on Steinberger's nonmembership in the Union, the Board properly held respondent Century violated Section 8(a) (1) and (3), and the respondent Union violated Section 8(b) (1) (A) and (2) of the Labor Management Relations Act.

When this matter was first heard, the trial examiner recommended only that Steinberger be reimbursed for any loss of wages incurred. The Board went further and directed not only the reimbursement for loss of wages, but also ordered reinstatement.

With the exception of the one day, May 30, 1955, and the week of June 12 to 19th, 1955, inclusive, Steinberger has received all the advantages of reinstatement. His discharge in October 1955 was for good and sufficient cause.[2]

■ Steinberger was lawfully discharged. He did not remain an employee and is therefore not entitled to reinstatement to his former position. Cf. N.L. R.B. v. Montgomery Ward & Co., 8 Cir., 1946, 157 F.2d 486. Sec. 10(c), Labor Management Relations Act, 29 U.S.C.A. § 160(c). Stehli & Co., Inc., et al., 1939, 11 NLRB 1397.

We therefore hold that there shall be stricken from the supplemental decision and order of the National Labor Relations Board of June 22, 1959:

(a) the second paragraph under "The remedy";

(b) three words in the third paragraph of "The remedy," i. e., "offer of reinstatement." In the place of the words so stricken there shall be inserted the words "his lawful discharge";

(c) the last two sentences of the third paragraph of "The remedy";

(d) the entire paragraph headed I(b) (1) of the order. In the place thereof shall be inserted the following paragraph:

"(1) Make Alfred J. Steinberger, Jr., whole for any loss of pay he may have suffered by reason of the discrimination against him, as provided in the Section herein entitled 'The remedy.' "

(e) the words "and the right of reinstatement of" in paragraph I(b) (2) of the order;

(f) the words "discharge, refusal to reinstate or otherwise" in paragraph II (a) (1) of the order;

(g) the entire paragraph headed II(b) (2) of the order;

(h) all of the third indented paragraph of Appendix A. In the place

2. The refusal of the Regional Director and General Counsel to issue a complaint with respect to this October discharge is final and unappealable. N. L. R. B. v. Swift & Company, 8 Cir., 1956, 233 F.2d 226, 231; Hourihan v. N. L. R. B., 1952, 91 U.S.App.D.C. 316, 201 F.2d 187, certiorari denied 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359; Lincourt v. N. L. R. B., 1 Cir., 1948, 170 F.2d 306.

thereof shall be inserted the following paragraph:

"We will make Alfred J. Steinberger, Jr., whole for any loss of pay suffered as a result of the discrimination against him."

(i) the words "discharge, refuse to reinstate, or otherwise" from the first indented paragraph of Appendix B; and

(j) all of the fourth indented paragraph of Appendix B.

As so modified the Board's Supplementary Order is enforced.